180 N.J. Super. 128 (1981)
433 A.2d 844
WAYNE TENANTS COUNCIL, AN UNINCORPORATED ASSOCIATION, PLAINTIFF,
v.
MAYOR AND COUNCIL OF THE TOWNSHIP OF WAYNE; AND TOWNSHIP OF WAYNE, A MUNICIPAL CORPORATION, DEFENDANTS.
Superior Court of New Jersey, Law Division Passaic County.
Decided June 2, 1981.
*130 James A. Tarella for plaintiff (Tarella & Liftman, attorneys).
Marjorie Neifeld for defendants (Frank Scangarella, Township Attorney, attorney).
*131 ROMEI, J.J.D.R.C. (temporarily assigned).
Once again, the facial validity of a rent control ordinance is challenged, this time by Wayne Township tenants.
On July 16, 1980 the governing body of Wayne adopted Ordinance 63 of 1980, entitled "AN ORDINANCE TO AMEND CHAPTER 145 (RENT LEVELING) OF THE REVISED ORDINANCES OF THE TOWNSHIP OF WAYNE," which substantially revised the previous rent control ordinance.
Plaintiff Wayne Tenants Council has centered its attack on the ordinance to § 145-4C. (allowable rental increases grounded upon 100% of the increase in the housing component of the Consumer Price Index (C.P.I.)); § 145-11 (vacancy decontrol); § 145-12 (five-year exemption for new housing units) and § 145-15 (time limitation on filing complaints under prior ordinance). Defendants Mayor and Council of the Township of Wayne assert that the enactment of the subject ordinance constitutes the exercise of reasonable legislative judgment. Further, they move for the dismissal of the action because plaintiff failed to file its complaint within the time requirements of R. 4:69-6[1] and also on the grounds that the tenants association "lacks standing to challenge the ordinance."
Apartment rents have been regulated in Wayne since May 3, 1972 when Ordinance 22-1272 was enacted. This ordinance, as amended on three separate occasions, was subsequently upheld in Cosden v. Wayne Tp., 68 N.J. 543 (1975). Thereafter, the ordinance was amended at least six times. Application of the prior ordinance became in time so cumbersome and complicated that the rent leveling board was compelled to adopt a comprehensive set of guidelines establishing rules for interpreting the repealed ordinance.[2] The governing body therefore determined *132 that "it would be in the best interests of the Township to formulate a new rent control ordinance" because the prior ordinance had "become increasingly difficult to administer" and the "formulae employed" difficult to apply.
Preliminarily, it must be decided whether plaintiff's complaint should be dismissed since its action in lieu of prerogative writs was filed about 25 days after the accrual of the right to review. R. 4:69-6(a). The tenant's association contends that the time period should be enlarged, as provided in R. 4:69-6(c), because "To denigrate this right to due process on the basis of a procedural technicality flies in the face of ... substantial interests...." Exceptions to the time limitation requirement "should be but exceptionally condoned, and only in the most persuasive circumstances." Kent v. Mendham, 111 N.J. Super. 67, 76 (App.Div. 1970). Nonetheless, this action does involve "important public rather than private interests which require adjudication or clarification." Brunetti v. New Milford, 68 N.J. 576, 585-587 (1975).
There exists in this case a serious question regarding the association's standing to maintain these proceedings, particularly since plaintiff challenges an ordinance enacted for the benefit of its members. However, the history of rent control in Wayne reveals that much litigation developed in the past over the construction of prior ordinances. It is in the interest of tenants and landlords to clarify immediately the legal status of the substantially revised ordinance. Accordingly, the 45-day limitation period is enlarged.
*133 The tenants first attack is focused upon § 145-4C which provides that "no landlord shall be entitled to request or receive an increase in base rent for a tenant ... greater than percentage difference in the C.P.I. for the prior ... year...."[3] "Base rent," as defined in § 145-3B, means "the gross monthly rental." "C.P.I.," as defined in § 145-3C, means "the residential rent component of the shelter increment of the housing component of the Consumer Price Index" for the New York, Northeastern New Jersey region.
Plaintiff contends that this particular section of the ordinance is "arbitrary and capricious" and "unreasonable." Specifically, the claim is that the method of calculating allowable rental increases fails to accomplish the stated objectives "to prevent unwarranted and abnormal increases in rents" and "to protect tenants" from "undue impairment of their standard of living during the housing crisis." The tenant's association further asserts that this section "produces accelerated and inflationary rental increases." The use of the housing component of the C.P.I. is also challenged because it takes into account all types of rental property," even though only garden apartments are within the ambit of the Rent Leveling Ordinance." To substantiate these allegations, Wayne Tenants Council adduced uncontradicted testimony to show that allowable rental increases for 1981 will average between $25 to $30 a month compared to allowable average monthly increases of $7 to $10 (inclusive of the tax adjustment) a month under the prior ordinance.[4]
The applicable standard of review of the challenged ordinance is set forth in Hutton Pk. Gardens v. West Orange, 68 N.J. 543 (1975):
Municipalities have the power and authority to enact ordinances in support of the police power. Municipal ordinances, like statutes, carry a presumption of *134 validity ... The presumption is not an irrebuttable one ... but it places a heavy burden on the party seeking to overturn the ordinance. Legislative bodies are presumed to act on the basis of adequate factual support and, absent a sufficient showing to the contrary, it will be assumed that their enactments rest upon some rational basis within their knowledge and experience ... This presumption can be overcome only by proofs that preclude the possibility that there could have been any set of facts known to the legislative body or which could reasonably be assumed to have been known which would rationally support a conclusion that the enactment is in the public interest .... [at 564-565; emphasis supplied; citations omitted]
Plaintiff has not made the requisite showing of unreasonableness. The method chosen by the governing body to determine allowable increases is in fact reasonable even though higher rentals result. The formula utilized is a workable provision. Plaintiff apparently prefers the complicated formulas applied under the prior ordinance because allowable permitted increases were lower. But, "A municipality is not forever bound by the formula for rent increases it once adopts; the formula can be changed...." Modular Concepts, Inc. v. South Brunswick Tp., 146 N.J. Super. 138, 144 (App.Div. 1977), certif. den. 74 N.J. 262 (1977) (emphasis supplied).
It is true that the allowable rental increases for 1981 will be greater under the new ordinance. Allowable rental increases will fluctuate in future years based upon the rise or decrease in the housing component of the C.P.I. Nonetheless, "no matter how much of an increase is allowed, it cannot exceed that permitted in an uncontrolled market." Branch Brook Gardens v. Rent Leveling Bd., 177 N.J. Super. 1, 14 (App.Div. 1980). Nor is the choice of the housing component of the C.P.I. arbitrary. The residential rent component is derived from only rental property located in this part of the country. Therefore, determination of rental increases in Wayne is based on increases in rental costs in Wayne's own geographical area. A review of the evidence adduced by Wayne Tenants Council reveals that plaintiff in fact questions the wisdom of the legislative policy adopted by Wayne. "The judiciary will not evaluate the weight of the evidence for and against the enactment nor review the wisdom of any determination of policy which the legislative *135 body might have made." Hutton Pk. Gardens v. West Orange Town Council, supra at 565. A formula could have been adopted which would have allowed lower permissible increases. Wayne chose not to do so. This it had a right to do. The wisdom of the legislative policy in fact adopted cannot be reviewed by the court.
Moreover, plaintiff "does not have standing to assert illegality" of § 145-4C. Wayne is not required to enact a rent leveling ordinance. In fact, it may abolish rent control entirely. No matter how much of an increase is allowed under the new ordinance "it cannot exceed that permitted in an uncontrolled market." Branch Brook Gardens v. Rent Leveling Bd., supra at 14. Consequently, plaintiff does not have a "right" to challenge this provision of the ordinance on the ground that it provides for unreasonably high increases.
Plaintiff next attacks the modified vacancy decontrol provisions of the ordinance and another section thereof which exempts rentals for new housing space from control for an initial period of five years.
Additional stated purposes of the ordinance include:
To improve the ability of and to encourage owners of property to maintain standards of habitability commensurate with the quality of life of the Township of Wayne ... To support and to strengthen the municipal tax base otherwise weakened by lowering standards of habitability, seriously eroding net operating income, all of which impede the ability of the municipality to provide necessary or desired services ... To avoid unnecessary restrictions upon the economy of the municipality ... To encourage construction of new rental housing within the municipality to provide for the housing needs of citizenry, and to provide employment in the housing construction industry. [Sections 145-2(c), (d), (e), (f) and (g)]
And § 145-11 provides that housing space "rented or offered for rent for the first time after a vacancy has occurred in any unit, shall not be restricted by the terms of this Chapter in fixing the amount of the rental charged for such unit upon the first or initial letting thereof subsequent to the occurrence of such vacancy." However, "any subsequent increase in the rental charged or collected" shall thereafter be subject to the *136 provisions of the ordinance. A vacancy is defined in § 145-11b "to have occurred only if said unit has become vacant and unoccupied by reason of the fact that: (1) any tenant or tenants occupying the same has or have died; or (2) voluntarily surrendered possession and removed therefrom, or, (3) been lawfully evicted and removed therefrom pursuant to the order or judgment and warrant of a court of competent jurisdiction." Initial rents for new multiple-housing units and housing space rented for the first time are exempted for five years from rental control. Any subsequent rental thereafter is again subject to control. At the trial plaintiff attempted to establish the arbitrariness and unreasonableness of the modified vacancy decontrol provision by adducing uncontradicted testimony establishing: (1) increases for vacant apartments subject to decontrol have averaged between $100-$150 a month and (2) a tenant attempted to exchange an apartment for a similar apartment in another part of the same building because of too much noise. He was told that the rental would amount to $508 a month although his present rental was $366 a month. Insofar as the provisions exempting new housing space from control, plaintiff showed that all land currently zoned for multi-family housing in the municipality is currently occupied by garden apartments, in an attempt to prove that this provision was unreasonable.[5]
Needless to say, the modified vacancy decontrol and initial rent exemption provisions of the ordinance are presumed to be reasonable and valid. The applicable standards governing the review of the challenged sections are as follows:
The presumption of reasonableness and validity which attends all municipal enactments ... can only be overcome by clear and compelling evidence demonstrating its unreasonableness. The burden of proof in that regard rests upon the party assailing the validity thereof.... The court's role in reviewing ordinances is narrow and limited. We do not judge the wisdom thereof, but act only if the presumption of validity is overcome by an affirmative showing of *137 unreasonableness or arbitrariness. If the issue is debatable, the ordinance must be upheld. [Dock Watch Hollow Quarry Pit v. Warren Tp., 142 N.J. Super. 103, 116; citations omitted; aff'd 74 N.J. 312 (1977)]
Further, "numerous arguments can be marshalled for and against vacancy decontrol. Resolution of this debate is clearly a legislative function." Helmsley v. Fort Lee, 78 N.J. 200, 240 (1978), app. dism. 440 U.S. 978, 99 S.Ct. 1782, 60 L.Ed.2d 237 (1979). The governing body has concluded that modified vacancy decontrol will promote "the construction of rental housing"; will "remove unnecessary restrictions upon the economy of Wayne"; will "support and strengthen the municipal tax base otherwise weakened by lowering standards of habitability," and will "maintain standards of habitability commensurate with the quality of life in Wayne." Wayne has decided that the protection of the rent control ordinance should be limited to those tenants presently in residence in order that the other objectives, equally important to the citizens, can be accomplished by the use of modified vacancy decontrol which distinguishes between tenants in residence and potential movers-in. It is, of course, true that higher rents are charged for a vacant apartment. It is also true that tenants presently in residence who have legitimate reasons for moving voluntarily will be adversely affected economically if they seek to rent an apartment in Wayne. Nonetheless, they are protected as long as they continue to occupy their present apartments. The governing body has exercised its legislative wisdom. The court cannot interfere because plaintiff has not made an affirmative showing of unreasonable or arbitrariness. At most, the tenant's association questions the wisdom of the legislative policy.
Further, the tenants do not have a vested interest which entitles them to have rent control unaltered for their benefit. "No person has a vested interest in any rule of law which entitles him to have it remain unaltered for his benefit." Gauthier v. Gabel, 44 Misc.2d 887, 255 N.Y.S.2d 200 (Sup.Ct. 1964), *138 aff'd 16 N.Y.2d 720, 209 N.E.2d 723, 262 N.Y.S.2d 105 (Ct.App. 1965). And, in the exercise of the police power the governing body "need not control all rents or none." Woods Housing Expediter v. Cloyd W. Miller Co., 333 U.S. 138, 145, 68 S.Ct. 421, 424, 92 L.Ed. 596 (1948); Russell v. Treasurer and Receiver General, 331 Mass. 501, 120 N.E.2d 388 (Sup.Jud.Ct. 1954); Gauthier v. Gabel, supra.
Plaintiff's challenge to the five-year exemption from rent control for new housing units also cannot succeed for the reasons stated above.
Wayne Tenants Council also contends that the modified vacancy decontrol section is unconstitutional because the legislative classification distinguishing between tenants in residence and potential movers into vacant apartments denies them of equal protection of the law, contrary to N.J.Const. (1947), Art. I, and U.S.Const., Art. XIV.
The criteria applicable to judicial review of a legislative classification challenged on the grounds of denial of equal protection is set forth in David v. Vesta Co., 45 N.J. 301 (1965), as follows:
The equal protection clause of the Fourteenth Amendment does not deprive the State of the power to classify in the adoption of police laws, but allows wide discretion, precluding only that done without any reasonable basis and therefore purely arbitrary. The constitutionality of a legislative classification is presumed, and one who assails the classification must carry the burden of showing its arbitrariness.... And the classification must be upheld if any set of facts can reasonably be conceived to support it. In short, the equal protection clause forbids only invidious discrimination." [at 314, 315, citations omitted; emphasis supplied.]
The vacancy decontrol provision is not violative of the equal protection provisions of either the Federal or New Jersey Constitutions. Separate treatment of vacant apartments is warranted in order to accomplish the legislative policy of increasing the number of residential housing units, avoiding unnecessary *139 restrictions upon the economy of the municipality and strengthening the municipal tax base.
Consequently, there is a reasonable basis for the action of the governing body which determined to protect tenants in residence while at the same time allowing rental for decontrolled units to be subject to an uncontrolled market. The vacancy decontrol section is constitutional. Wayne could have abolished rent control in its entirety. Branch Brook Gardens v. Rent Leveling Bd., supra. It chose instead to continue to protect tenants only where the need seemed to be greatest. The court cannot interfere with the exercise of this legislative judgment.
Finally, plaintiff challenges § 145-15 of the ordinance which repeals "in their entirety" all prior rent control ordinances. The governing body possesses such power because the power to pass an ordinance inherently includes therein the power to repeal it. Rutherford Bd. of Rec. Com'rs v. Rutherford, 166 N.J. Super. 476, 480 (App.Div. 1979). This section further provides that "no complaint shall be received from any aggrieved party by the Rent Leveling Board ... petitioning to be heard and/or for relief pursuant to any of the terms "of the prior ordinances 120 days following the effective date of this ordinance." Wayne Tenants Council contends that the 120-day limitation is unreasonable because some tenants allegedly were not aware of this provision. In fact, at least 45 complaints were filed by tenants during this period asserting claims under the prior ordinances. The governing body in its legislative wisdom determined to grant tenants a reasonable period of time to pursue their claims under the prior ordinances even though said ordinances were repealed "in their entirety." This exercise of judgment has not been affirmatively shown to be unreasonable or arbitrary. The period of time limitation adopted is therefore valid.
In conclusion, then, judgment shall be entered in favor of defendants for the reasons above stated.
NOTES
[1] Plaintiff's right to relief accrued on July 23, 1980, the date the ordinance was published, but this litigation was not instituted until September 26.
[2] To determine allowable increases under the prior ordinances, it was necessary to determine rent on a specific apartment unit as of November 1972, exclusive of taxes and extraordinary charges. In each year, new rent was determined by multiplying a percentage of the increase in the immediately preceding year's C.P.I. differential times the base year rent (1972) and adding it to the previous year's maximum allowable rent. The percentage of C.P.I. applicable varied depending on the year of the lease, e.g., 100% of C.P.I. until 1974 and 50% of C.P.I. thereafter. Cumulative tax increases since the base year, as well as extraordinary charges, were then extrapolated from the C.P.I. calculations and phased backed in on a yearly basis to determine the actual rent.
[3] Exclusive of all extraordinary charges, hardship considerations or capital improvement expenditures.
[4] Tax surcharge adjustments are not permitted under the new ordinance.
[5] There is presently a 175-acre urban renewal tract, a portion of which may be hereafter zoned for apartments. Further, there could be variances granted or rezoning in the future.