691 A.2d 435

966 VIDEO, INC., PLAINTIFF, v. MAYOR AND TOWNSHIP COM-
MITTEE OF HAZLET TOWNSHIP, ZONING OFFICER AND
CONSTRUCTION CODE OFFICIAL OF HAZLET TOWNSHIP,
DEFENDANTS.

Superior Court of New Jersey
Law Division Monmouth County

Decided September 27, 1995.

502 

504

506

*Joseph D. Youssouf,* Esq. for plaintiff (*Joseph D. Youssouf,* attorney).

*Joseph L. Foster,* Esq. for defendants (*Ansell, Zaro, Bennett & Grimm,* attorneys).

*Steven F. Nemeth,* Esq. for defendants (*Berry, Kagan, Sahradnik & Kotzas,* attorneys) (damage claims).

HAYSER, J.T.C., temporarily assigned.

Plaintiff is the leasee of certain property denoted as Block 68.1, Lot 27 of the Township of Hazlet Tax Map, also known as 966–972 Highway 36, Hazlet Township. The subject property is located in the B–H (Business Highway) Zoning District.

In October, 1993, an application for a certificate of continued occupancy to operate a video and bookstore on the subject property was denied by defendant construction code official due to the failure to obtain a zoning permit from defendant zoning officer.[1] Apparently, no appeals as to these denials were brought until on or about March 8, 1994, when plaintiff inexplicably sought permission of the defendant zoning officer to appeal,

---

[1] At the time of the application the B–H Zoning District provided for a variety of commercial uses. The general rule is that where it is the intent to prohibit or proscribe a particular use, such intent must be stated with clarity. *Bern v. Fair Lawn,* 65 *N.J.Super.* 435, 444–45, 168 *A.2d* 52 (App.Div.1961).

Moreover, *N.J.S.A.* 40:55D–7 permits, as may be required by ordinance, the issuance of a zoning permit to attest to the use of property in accordance with the applicable zoning ordinance. Furthermore, a municipality, by ordinance, can require a certificate of continued occupancy. *State v. CIB International,* 83 *N.J.* 262, 416 *A.2d* 362 (1980); *see also Tp. of Mahwah v. Landscaping Technologies,* 230 *N.J.Super.* 106, 109, 552 *A.2d* 1021 (App.Div.1989); *Acqua Development Corp. v. Tp. of Holmdel,* 287 *N.J.Super.* 578, 671 *A.2d* 636 (Law.Div.1995).

however untimely, the denial of the zoning permit to the Township's zoning board of adjustment. *See N.J.S.A.* 40:55D–72a.

That permission, though originally denied, was finally granted on or about March 17, 1994. No further action was apparently taken before the zoning board and apparently plaintiff sought no judicial relief. Moreover, *N.J.S.A.* 40:55D–73b was apparently never invoked, assuming an application was before the board of adjustment with an appeal having been taken.

On March 1, 1994, defendant Township Committee finally adopted Township Ordinance No. 940–94. Among other things, this ordinance provided for a new zoning district, *i.e.,* the BP–3 (Business Professional) District, whose permitted uses included "sexually oriented businesses," which in turn was defined to include an adult bookstore or video store. Moreover, the ordinance prohibited such a business within 1500 feet of a place of worship, 500 feet of a school or 1000 feet of any public park or playground. Finally, the ordinance prohibited the location of any "sexually oriented business" in any zoning district except the BP–3 Zoning District. Plaintiff's property was not located in this new zoning district.

On March 15, 1994, defendant Township Committee finally adopted Township Ordinance No. 944–94, amending the earlier ordinance to provide for "sexually oriented businesses" to be located in the newly created I–A–1 (Industrial Assembly) District and added to the permitted uses in the I–M (Industrial Marine) District. Again, plaintiff's property was not included in these zoning districts or added to the BP–3 Zoning District, the only zones where "sexually oriented businesses" were permitted to be located.

In July, 1994, plaintiff, again, submitted an application for a certification of continued occupancy. In August, 1994, defendant zoning officer requested further information as to "the specific nature of videos/books/magazines that are proposed to be offered for sale or rental," in order that a zoning determination could be made as to whether the proposed use was permitted in the B–H

Zoning District which did not permit "sexually oriented businesses." On September 3, 1994, plaintiff's counsel made further inquiry as to defendant zoning officer's earlier letter. On September 13, 1994, defendant zoning officer reiterated his earlier request for information.

When no further information was provided, the application for a certificate of continued occupancy was denied on or about October 13, 1994. Apparently no appeals as to these denials, *i.e.* zoning permit and/or certificate of continued occupancy, were ever brought until now.[2] Finally, on or about December 23, 1994, defendant Zoning Officer advised plaintiff that if a use was to commence prior to the issuance of a certificate of continued occupancy, prosecution for an ordinance violation would follow.

On March 6, 1995, plaintiff filed a complaint in lieu of prerogative writs against defendants Mayor and Township Committee, zoning officer and construction code official.[3] In its complaint, plaintiff sought various relief against these defendants:

1. An order requiring the defendant zoning officer and construction code official to timely issue any required zoning permit and certification of continued occupancy.

2. A determination of the constitutional and statutory validity of Township Ordinance No. 944–94.

3. Damage claims under 42 *U.S.C.* § 1983 against (a) the defendant zoning officer and construction code official for their actions before and after the adoption of the ordinance in question claimed in violation of the First, Fifth, and Fourteenth Amendments to the United States and New Jersey Constitutions, and (b) all defendants for a claimed conspiracy to violate plaintiff's rights under the Fifth and Fourteenth Amendments to the United States Constitution.

The issues to be resolved by the court at this time as framed by the pleadings and pre trial order of June 12, 1995, are as follows:

1. Is the challenge to the validity of Township Ordinance No. 944–94 time barred under *R.*4:69–6?

---

[2] In Paragraph 16 of the First Count of the Verified Complaint plaintiff acknowledges notice of these denials by no later than December 23, 1994.

[3] The caption was amended at the pre-trial conference to set forth the construction code official as a named defendant.

2. Are plaintiff's claims barred under the doctrines of waiver, estoppel and/or laches?

3. Has plaintiff failed to exhaust its administrative remedies, and, if so, what are the consequences?

4. Are plaintiff's damage claims barred under the immunities claimed by the defendants?

## DISCUSSION

### A. Time Bar Rule

Plaintiff argues that Township Ordinance No. 944–90 "was specifically adopted to thwart plaintiffs (sic) attempt to open its proposed business in the premises described above." (Paragraph 10, Second Count, Verified Complaint) [4]

■ In its challenge to the ordinance, defendants argue that plaintiff is belatedly seeking to avoid the consequences of R.4:69–6(a) by attempting to cloak its claims, now, in part at least, as being an action for declaratory relief.

Plaintiff, in its complaint in lieu of prerogative writs, seeks in the Second and Third Counts a judgment declaring the ordinance in question unconstitutional and void. Seeking declaratory relief in the context of an action in lieu of prerogative writs is not necessarily unusual. *Bell v. Tp. of Stafford,* 110 *N.J.* 384, 388, 541 *A.*2d 692 (1988).

■ Moreover, the characterization or designation of the nature of an action does not determine the substantive right of plaintiff to obtain relief from the courts on the merits of his claim, so long as defendants are reasonably apprised of the factual allegations and the relief sought, have sufficient notice to defend, and are in no sense prejudiced by the characterization given the action by plaintiff. *Zoning Bd. of Adj. of Green Brook v. Datchko,* 142 *N.J.Super.* 501, 508, 362 *A.*2d 55 (App.Div.1976). The instant complaint meets these standards.

---

[4] Plaintiff will be deemed to have also challenged Township Ordinance No. 940–94, incorporated in its entirety in Township Ordinance No. 944–94.

*R.*4:69–6(a) provides, in relevant part, that "no action in lieu of prerogative writs shall be commenced later than 45 days after the accrual of the right to the review, hearing or relief claimed." Plaintiff concedes its present action was not commenced within forty-five days of the final adoption of the ordinance in question, which it also acknowledges was adopted in response to its desired use for the subject property.

The Declaratory Judgment Act, *N.J.S.A.* 2A:16–50 to –62, provides that "its purpose is to settle and afford relief from uncertainty and insecurity with respect to rights, statutes and other legal relations. It shall be liberally construed and administered." *N.J.S.A.* 2A:16–51. "A person ... whose rights, status or other legal relations are affected by a ... municipal ordinance ... may have determined any question of construction or validity arising under the ... ordinance ... and obtain a declaration of rights, status or other legal relations thereunder." *N.J.S.A.* 2A:16–53.

Plaintiff's present action arises, at least in part, as a result of the defendant zoning officer's letter of December 23, 1994, that prosecution would result if it commenced a use, perhaps the possibly concluded use, without benefit of a certificate of continued occupancy. *See Weissbard v. Potter Drug and Chemical Corp.,* 6 *N.J.Super.* 451, 455–56, 69 *A.*2d 559 (Ch.Div.1949). Thus, plaintiff asserts that such enforcement based upon the ordinance in question would chill if not abridge certain constitutionally protected rights.

In *Ballantyne House Assoc. v. Newark,* 269 *N.J.Super.* 322, 635 *A.*2d 551 (App.Div.1993), while taking issue with a number of the substantive rulings of the trial court, nevertheless, the appellate court concluded that the court below had properly denied defendant's motion to invoke the time bar rule under *R.*4:69–6(a). As the court stated:

Insofar as plaintiffs' complaints challenged the constitutionality of a municipal ordinance, they were maintainable either as declaratory judgment actions, *Bell v. Tp. of Stafford,* 110 *N.J.* 384, 541 *A.*2d 692 (1988), or as actions in lieu of prerogative writs, *Hills Development Co. v. Twnshp. of Bernards,* 103 *N.J.* 1, 44–45, 510 *A.*2d 621 (1986). If viewed as declaratory judgment actions, plaintiffs'

constitutional claims would not be subject to the time limit on actions in lieu of prerogative writs imposed by *R.*4:69–6(a).

[*Id.* at 330, 635 *A.*2d 551.]

Moreover, a declaratory judgment action is not precluded by the existence of another appropriate remedy, *Vonins, Inc. v. Raff,* 101 *N.J.Super.* 172, 177, 243 *A.*2d 836 (App.Div.1968), even though declaratory relief can be denied "where another remedy would be more effective or appropriate." *Adams v. Atlantic City,* 26 *N.J.Misc.* 259, 261, 59 *A.*2d 825 (Sup.Ct.1948); *Provident Mutual Life Ins. Co. v. Unemployment Compensation Comm'n,* 126 *N.J.L.* 348, 351–53, 19 *A.*2d 630 (E. & A.1941). Whether such relief is appropriate and should be granted rests in the sound discretion of the court. *Weissbard, supra,* 6 *N.J.Super.* at 451, 69 *A.*2d 559.

Furthermore, *R.*4:69–6(a) is also subject to the time bar exception provided under subsection (c), "where it is manifest that the interest of justice so requires." This exception has been defined to include "substantial and novel" constitutional questions. *Riddelstorffer v. Rahway,* 82 *N.J.Super.* 36, 196 *A.*2d 550 (Law Div.1963).

However, more recent decisions consider that when we are concerned that the limits of an ordinance are not determined and that failing continues to pose harm to the plaintiff and others potentially similarly situated, with the prospect of further litigation, the result is that a "substantial" constitutional question is posed for resolution. *Home Builders League of South Jersey, Inc. v. Evesham Tp.,* 174 *N.J.Super.* 252, 256, 416 *A.*2d 81 (Law Div.1980); *Wayne Tenants Council v. Wayne Tp.,* 180 *N.J.Super.* 128, 132, 433 *A.*2d 844 (Law Div.1981); *Reahl v. Randolph Tp. Municipal Util. Auth.,* 163 *N.J.Super.* 501, 395 *A.*2d 241 (App.Div. 1978).

For all of these reasons the court has concluded that the time bar rule of *R.*4:69–6(a) should not be applied to plaintiff's

challenge of the ordinance in question.[5]

B. *Exhaustion of Administrative Remedies*

Defendants argue that the constitutionality question as to the ordinance before the court should not be determined unless and until necessary and ripe for decision, citing *Route 15 Associates v. Jefferson Township,* 187 *N.J.Super.* 481, 488–89, 455 *A.*2d 518 (App.Div.1982) and related opinions.

■ Generally, but obviously not mandatorily, under the doctrine of "strict necessity", courts will adjudicate the constitutionality of legislation only if a constitutional determination is absolutely necessary to resolve the controversy between the parties. *Rescue Army v. Municipal Court of Los Angeles,* 331 *U.S.* 549, 67 *S.Ct.* 1409, 91 *L.Ed.* 1666 (1947); *Donadio v. Cunningham,* 58 *N.J.* 309, 325–26, 277 *A.*2d 375 (1971).

■ In determining the constitutional validity of a legislative enactment it is presumed valid; the burden to prove otherwise is a heavy one and courts will even infer, when necessary, an adequate factual basis. *Hutton Park Gardens v. West Orange Town Council,* 68 *N.J.* 543, 564–65, 350 *A.*2d 1 (1975). However, courts are far more demanding of clarity, specificity, and restrictiveness with respect to legislative enactments claimed to have a demonstrable impact on fundamental rights. *State v. Cameron,* 100 *N.J.* 586, 592, 498 *A.*2d 1217 (1985).

■ Thus, an ordinance that can substantially impact on freedom of expression requires the municipality to prove its constitutional validity by (1) demonstrating a legitimate governmental interest that is to be served by the enactment, (2) demonstrating a reasonable factual basis indicating that the regulation advances

---

[5] In view of this conclusion, the court also determines that the further defenses as to estoppel, waiver and laches as applied to the ordinance challenge must be denied. *See, e.g., Asbury Park Press v. Woolley,* 33 *N.J.* 1, 14–15, 161 *A.*2d 705 (1960).

the governmental interest, and (3) showing that the regulation is no more expansive than necessary to advance that interest. *Metromedia, Inc. v. City of San Diego*, 453 *U.S.* 490, 101 *S.Ct.* 2882, 69 *L.Ed.2d* 800 (1981); *State v. Miller*, 83 *N.J.* 402, 416 *A.*2d 821 (1980).

█ Even when faced with a fundamental constitutional challenge, however, the issue of "strict necessity" is closely related to the exhaustion requirement, although exhaustion is neither jurisdictional nor absolute. *Borough of Matawan v. Monmouth Cty. Bd. of Taxation*, 51 *N.J.* 291, 296, 240 *A.*2d 8 (1968).

█ When it is claimed that a zoning ordinance is constitutionally invalid as applied to a plaintiff's property, a trial court should ordinarily decline to consider such an attack on the ordinance until the plaintiff has exhausted his variance remedy under *N.J.S.A.* 40:55D–70. *Route 15 Associates, supra.* The principle rests upon the conclusion that the administrative remedy is adequate for the desired relief. *Warrenville Plaza v. Warren Tp.*, 230 *N.J.Super.* 461, 465, 553 *A.*2d 874 (App.Div.1989).

█ Moreover, exhaustion of administrative remedies may be permitted, if not required, even prior to commencing an action under 42 *U.S.C.* § 1983 for a constitutional claim of injury. *Patsy v. Board of Regents of State of Florida*, 457 *U.S.* 496, 102 *S.Ct.* 2557, 73 *L.Ed.2d* 172 (1982). Finally, even where the remedy may not be as complete as under 42 *U.S.C.* § 1983, a state remedy can be sufficient in addressing a claimed constitutional deprivation. *Parratt v. Taylor*, 451 *U.S.* 527, 101 *S.Ct.* 1908, 68 *L.Ed.2d* 420 (1981). *See also R.*4:69–5.

█ Exceptions to the exhaustion requirement, however, include where the available administrative remedy would be futile, *Brunetti v. Borough of New Milford*, 68 *N.J.* 576, 589, 350 *A.*2d 19 (1975), and where the only issue to be resolved is a legal one. *Borough of Matawan, supra*, 51 *N.J.* at 297, 240 *A.*2d 8. The court has broad discretion in this regard. *Nolan v. Fitzpatrick*, 9 *N.J.* 477, 486, 89 *A.*2d 13 (1952).

At this stage in the proceedings little has been disclosed as to the nature of the proposed use. It may or may not come within the parameters of the ordinance in question as a "sexually oriented business." Depending upon the facts, it may even be concluded by interpretation under *N.J.S.A.* 40:55D–70b that no variance relief is required under *N.J.S.A.* 40:55D–70d.

Therefore, in resolving this issue, the court has found helpful the decision in *Trinity Resources, Inc. v. Tp. Of Delanco*, 842 *F.Supp.* 782 (D.N.J.1994), wherein plaintiffs had brought an action under 42 *U.S.C.* §§ 1983 and 1985 claiming deprivation of First, Ninth and Fourteenth Amendment rights. They sought a declaratory judgment, claiming the zoning ordinance was unconstitutional as applied to them because it impinged upon their "religious freedom" under the First Amendment, as well as damages and injunctive relief against municipal enforcement actions. Plaintiffs were cited for operating a "church," as a change of use from a previously permitted recreational use, not permitted in the C (Commercial) Zoning District. Churches were a permitted use in only a residential zone.

Plaintiffs argued that they should not be required to seek either an interpretation or use variance from the board of adjustment because their suit was based upon a claim under 42 *U.S.C.* § 1983. In determining the matter was not ripe for judicial intervention, the court cited *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 *U.S.* 172, 105 *S.Ct.* 3108, 87 *L.Ed.*2d 126 (1985), which discussed the related principles of exhaustion and ripeness:

> While the policies underlying the two concepts (*i.e.* ripeness and exhaustion) overlap, the finality requirement is concerned with *whether the initial decision-maker has arrived at a definite position on the issue* that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and often a remedy if the decision is found to be unlawful or otherwise inappropriate.
>
> [*Id.* at 192–93, 105 *S.Ct.* at 3119–120, 87 *L.Ed.*2d 126. (Emphasis added).]

The *Trinity Resources* court went on to cite *Felmeister v. Office of Attorney Ethics*, 856 *F.*2d 529 (3rd Cir.1988), as to a two-part

test to determine ripeness of the controversy: (1) the fitness of issues for judicial review and (2) the hardship to the parties if judicial review is withheld at this time.

As to the first prong, *i.e.* fitness for judicial review, among the factors to be considered is whether additional factual development is required, if not helpful. As the court stated:

> It is a routine and essential component of the site plan application process that the applicants must specify the actual intended uses of the property.... *This must be done so that* the Planning Board, and *if necessary, the Zoning Board, can determine whether the plan conforms to the zoning code or may require variances.*
>
> [*Trinity Resources, Inc.*, 842 *F.Supp.* at 797 (emphasis added).]

Relevant to the issue of whether a constitutional challenge to an ordinance should be entertained before administrative action is completed, the *Trinity Resources* court went on to state, when considering if a use is permitted under the zoning ordinance and the need for further administrative proceedings:

> The Zoning Board may determine that plaintiffs are not operating as a "church" within the meaning of the zoning ordinance. Such an interpretation would render that constitutional challenge moot. The Zoning Board may instead take the view that the intended use of the building is as a "church," but grant a variance permitting it. That too, much as plaintiffs might disagree with such interpretation, would likely render the issue non-justiciable. (*Williamson, supra,* at 191–94, 105 *S.Ct.* at 3119–21). A justiciable issue would exist only if the Zoning Board, in a final adverse determination, rejects plaintiffs' arguments on the interpretation of the term "church" as it affects them under the zoning ordinance, and further fails to grant plaintiffs a variance for their religious use of the property. The Zoning Board would need the facts in order to make its determination.
>
> [*Id.* at 798. *See also Taylor Investment Ltd. v. Upper Darby Twp.*, 983 *F.*2d 1285 (3rd Cir.1993).]

The courts have stressed the particular importance of an adequate record in cases involving important constitutional interests and local zoning laws. *Jehovah's Witnesses Assembly Hall of Southern New Jersey v. Woolwich Tp.*, 223 *N.J.Super.* 55, 537 *A.*2d 1336 (App.Div.1988).

Turning to the hardship prong raised by the *Felmeister* court, the history of administrative approval denials and the plaintiff's reaction to such denials since October 1993 support no finding of obvious hardship, *i.e.* even where constitutional imperatives are

involved, there must be a "real and immediate" threat of enforcement against the plaintiff. *Hardwick v. Bowers*, 760 *F*.2d 1202, 1206–07 (11th Cir.1985), *rev'd on other grounds* 478 *U.S.* 186, 106 *S.Ct.* 2841, 92 *L.Ed.*2d 140 (1986).

Moreover, plaintiff's application to the Zoning Board to complete the local record, could insulate it from impending enforcement action pursuant to *N.J.S.A.* 40:55D–75. As discussed, the court must also consider and balance the proper role of the approving authority in this process, not usurped by judicial fiat. *Felmeister, supra* 856 *F*.2d at 535.

Finally, the court concludes that "strict necessity" does not require the testing at this time of the limits of the zoning maxims that every municipality need not provide for every use within its borders, *Fanale v. Borough of Hasbrouck Heights,* 26 *N.J.* 320, 325, 139 *A.*2d 749 (1958); *McNeill v. Plumsted Twp.,* 215 *N.J.Super.* 532, 537, 522 *A.*2d 469 (App.Div.1987); or that a municipality retains the continued right to amend its zoning regulations even in the face of an approval being sought, *Timber Properties, Inc. v. Chester Tp.,* 205 *N.J.Super.* 273, 277, 500 *A.*2d 757 (App.Div.1984); or the fact that in creating a generic zoning district the municipality may still define the compatible and desired uses in the district, *Manalapan Realty v. Township Committee,* 272 *N.J.Super.* 1, 9, 639 *A.*2d 318 (App.Div.1994), even in the face of constitutional questions.

Facially, the ordinance in question does not prohibit "sexually oriented businesses" throughout the Township. Factual findings would be required even as to the ordinance's application to the subject property to determine whether, in reality, either no such viable use is provided elsewhere and this site is suited for such a recognized use, or there is an outright prohibition, raising the specter of a true, overbroad restraint on freedom of expression, a fundamental right as discussed in *Bell v. Stafford Tp., supra.*

In *Schad v. Borough of Mount Ephraim,* 452 *U.S.* 61, 101 *S.Ct.* 2176, 68 *L.Ed.*2d 671 (1981), the Supreme Court concluded that an

ordinance construed to exclude live entertainment throughout the municipality violated protected First Amendment rights, and there were no reasonably identifiable zoning interests that could overcome this constitutional concern. However, in this regard the Court distinguished this situation from that presented in *Young v. American Mini Theatres, Inc.*, 427 *U.S.* 50, 96 *S.Ct.* 2440, 49 *L.Ed.2d* 310 (1976), which involved, as the Court concluded, only an incidental burden on First Amendment interests.

In *Young*, the Court found that the fact that the commercial exploitation of First Amendment protected material was subject to zoning and licensing requirements of the municipality was not a sufficient reason to invalidate an ordinance as a prior restraint on free speech where adult entertainment facilities were regulated as to their locations in relation to other regulated uses and residential areas. In discussing this first case before the Court concerned with the impact of a commercial zoning ordinance on the interest in constitutionally protected free expression, Justice Powell, in his concurring opinion, stated:

> The inquiry for First Amendment purposes is not concerned with economic impact; rather it looks to the effect of this ordinance upon freedom of expression. . . . [The municipality] has silenced no message, has invoked no censorship, and has imposed no limitations upon those who wish to view them. The ordinance is addressed only to the places at which this type of expression may be presented, a restriction that does not interfere with content. . . . To be sure some prospective patrons may be inconvenienced. . . . The constraints of the ordinance with respect to location may indeed create economic loss for some who are engaged in this business. But in this respect they are affected no differently from any other commercial enterprise that suffers economic detriment as a result of land-use regulation.
>
> [*Id.* at 78–9, 96 *S.Ct.* at 2456, 49 *L.Ed.2d* 310 (Powell, concurring opinion).]

Moreover, commercial speech is given somewhat less protection than pure or noncommercial speech. *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 *U.S.* 469, 109 *S.Ct.* 3028, 106 *L.Ed.2d* 388 (1989). Strict scrutiny is not required for the regulation of sexually explicit, but not obscene, activity or use as to location. *Young, supra.*

While the Court found in *Young* that there was evidence in the record to support an ordinance designed to prevent the concentra-

tion of such a use, in *City of Renton v. Playtime Theatres, Inc.*, 475 *U.S.* 41, 51–52 and 53, 106 *S.Ct.* 925, 931–32, 89 *L.Ed.*2d 29 (1986), the Court also indicated the municipality may rely upon studies in reaching its reasonable conclusion that it must address this issue and do so in this fashion, and further concluded there is no need "to ensure that adult-theatres or any other kinds of speech-related businesses for that matter, will be able to obtain sites at bargain prices." Finally, unlike the situation in *FW/PBS, Inc. v. City of Dallas*, 493 *U.S.* 215, 110 *S.Ct.* 596, 107 *L.Ed.*2d 603 (1990), we are not concerned here with an inefficient prior restraint licensing ordinance to operate an adult entertainment facility. As the Court stated in *Arcara v. Cloud Books, Inc.*, 478 *U.S.* 697, 706–07, 106 *S.Ct.* 3172, 3177, 92 *L.Ed.*2d 568 (1986), "First Amendment values may not be invoked by merely linking the words 'sex' and 'book.' "

In the context of these decisions, the factual circumstances should be delineated in the present case. Consideration of an application for interpretation and possibly variance relief will require the exploration of the factual circumstances presented and the interests involved. Plaintiff would set forth its factual basis for such relief and the board of adjustment must respond with specific findings, eventually reviewed by the court for affirmation or reversal. Even a denial of variance relief will require specific factual findings in support of the board's determination, *N.J.S.A.* 40:55D–10(g), including the required conclusion under the "negative criteria" that the use would represent a "substantial detriment to the public good," as well as being a "substantial" impact on the zoning plan and zoning ordinance. *N.J.S.A.* 40:55D–70. At the very least, such administrative action will identify these elements, presently unclear, in their factual context in further review by the court, and may even render the constitutional challenge effectually moot.

## C. *Defendants' Claimed Immunities*

As to the issue concerning immunities claimed by defendants in an action brought under 42 *U.S.C.* § 1983, their resolution

will ultimately be determined by any damage claims that remain and are continued after the prerogative writ phase is concluded. *See O'Neill v. Tp. of Washington,* 193 *N.J.Super.* 481, 486, 475 *A.*2d 55 (App.Div.1984).

However, some findings are deemed appropriate at this stage. The defendants Mayor and Township Committee have absolute immunity in exercising their legislative duties as to the enactment of Township Ordinance No. 944–94, as well as Township Ordinance No. 940–94. *Ryan v. Burlington County, N.J.,* 889 *F.*2d 1286, 1290 (3rd Cir.1989); *Aitchison v. Raffiani,* 708 *F.*2d 96, 99 (3rd Cir.1983); *Timber Properties, Inc., supra,* 205 *N.J.Super.* at 284, 500 *A.*2d 757. Therefore, as to these defendants, that claim will be dismissed as to civil rights violations alleged in the mere enactment of the ordinances themselves.

As to the claims of improper administrative action by the defendants zoning officer and construction code official, and all defendants as to civil conspiracy under 42 *U.S.C.* § 1983 (*see Morgan v. Union County,* 268 *N.J.Super.* 337, 364–367, 633 *A.*2d 985 (App.Div.1993)), these defendants are entitled to assert a qualified immunity. *Ryan, supra,* 889 *F.*2d at 1292; *Burke v. Deiner,* 97 *N.J.* 465, 472, 479 *A.*2d 393 (1984). The full resolution of claims under 42 *U.S.C.* § 1983 in this regard, being fact sensitive, will require further discovery as may be necessary. Immunity of a public official varies in proportion to the nature of the official function. *Burke, supra.*

Finally, the Tort Claims Act "notice" provisions do not apply to alleged individual constitutional violations and the resulting claims. *Morgan, supra,* 268 *N.J.Super.* at 356–57, 633 *A.*2d 985. However, the court expresses no view at this time as to the individual defenses of estoppel, laches and waiver, nor whether plaintiff would be entitled to temporary or interim damages eventually for even the period before the ordinances in question were adopted in March, 1994.

## CONCLUSION

For the reasons stated, the issue of the validity of Township Ordinance No. 944–94 is not ripe for resolution at this time considering the value of further fact finding which could render the challenge moot, but minimally can provide a full factual record for review as to the constitutional challenge to the ordinance in question. Further administrative proceedings will clarify, at least, and may resolve the factual issues involved. Under the doctrine of "strict necessity" the exhaustion of administrative remedies will achieve either of these goals, and under the specific facts of this case will not be a futile exercise even if final administrative relief is denied.

Therefore, the court hereby orders plaintiff to file an application with the Township Board of Adjustment for interpretation pursuant to *N.J.S.A.* 40:55D–70(b) and, in the alternative, for a use variance pursuant to *N.J.S.A.* 40:55D–70(d) within the next forty-five days. If the application is not filed, or not filed or prosecuted in good faith, the complaint may be dismissed on motion.

However, due to the issues of constitutional importance involved, the court will retain jurisdiction. If all administrative relief is denied, the matter will proceed as to that denial of administrative relief first, and the ordinance validity, second. If administrative relief is granted, the challenge to the ordinance's validity will be dismissed.

As to the damage claims, resolution of such claims as limited herein will await the outcome of the further administrative proceedings, and any further court review as to such proceedings. All such claims and defenses are reserved at this time unless voluntarily dismissed by the parties, except as specifically determined herein. No discovery proceedings are to be initiated by any party as to such claims or defenses without leave of court.