876 A.2d 847

K. HOVNANIAN COMPANIES OF NORTH CENTRAL JERSEY, INC., PLAINTIFF–APPELLANT, v. NEW JERSEY DEPARTMENT OF ENVIRONMENTAL PROTECTION, DEFENDANT–RESPONDENT, AND WENDY KELMAN NEU, JOHN L. NEU AND CONCERNED CITIZENS OF UNION TOWNSHIP, DEFENDANTS/INTERVENORS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued on May 9, 2005—Decided July 1, 2005.

Before Judges CUFF, WEISSBARD [1] and HOENS.

*Paul Schneider* argued the cause for appellant (*Giordano, Halleran & Ciesla,* attorneys; *Peter A. Buschsbaum,* of counsel and on the brief).

*Rachel Horowitz,* Deputy Attorney General, argued the cause for respondent (*Peter C. Harvey,* Attorney General, attorney; *Patrick DeAlmeida,* Deputy Attorney General, of counsel; *Ms. Horowitz,* on the brief).

*Carter H. Strickland, Jr.* argued the cause for intervenors-respondents (*Rutgers Environmental Law Clinic,* attorneys; *Thomas A. Borden,* of counsel and on the brief).

The opinion of the court was delivered by

HOENS, J.A.D.

Plaintiff K. Hovnanian Companies of North Central Jersey, Inc. (Hovnanian) appeals from the order of the Law Division dismissing its *Mount Laurel*[2] complaint on grounds of ripeness and failure to exhaust administrative remedies. We affirm.

Although the factual and procedural history that led to the entry of the order on appeal is lengthy and complex, we need only recite the following abbreviated summary thereof. In 1988, Hovnanian contracted to purchase a tract of land located in Union Township and known as Milligan Farm. The property had previously been identified by the Council on Affordable Housing (COAH) and the township as an appropriate location for construction of *Mount Laurel* housing. In or about 1990, Hovnanian

---

[1] Judge Weissbard did not participate in oral argument. However, with the consent of counsel he has joined in this opinion. *R.* 2:13–2(b).

[2] *S. Burlington County N.A.A.C.P. v. Tp. of Mount Laurel* (*Mount Laurel II* ), 92 *N.J.* 158, 456 *A.2d* 390 (1983); *S. Burlington County N.A.A.C.P. v. Tp. of Mount Laurel* (*Mount Laurel I* ), 67 *N.J.* 151, 336 *A.2d* 713, *cert. denied and appeal dismissed,* 423 *U.S.* 808, 96 *S.Ct.* 18, 46 *L.Ed.2d* 28 (1975).

entered into discussions with the New Jersey Department of Environmental Protection (NJDEP) in an effort to secure approvals for construction of a wastewater treatment facility and related permits to support construction of 292 units of housing on the property, of which twenty-nine were to be *Mount Laurel* units. Eventually, in the mid–1990s, Hovnanian, in concert with NJDEP, determined that the appropriate method of wastewater treatment for the project would require an on-site wastewater treatment facility. The treated effluent would be discharged to the surface water of the Sidney Brook, a stream that runs along the edge of the property. At about the same time, Hovnanian sought municipal site plan approval for the project.

On March 8, 1999, NJDEP granted Hovnanian an approval pursuant to the New Jersey Water Quality Planning Act, *N.J.S.A.* 58:11A–1 to –16, for an amendment to the Wastewater Management Plan (WMP) to allow for the proposed wastewater treatment facility. The amendment was noticed and adopted in 1999. At the same time, Hovnanian pursued other approvals with respect to flood hazards and wetlands encroachment. As a part of that review process, the United States Fish and Wildlife Service determined that no federal approval was needed because it had concluded that there would be no detriment to any federally protected species or habitat.

In March 1999, NJDEP issued a final New Jersey Pollutant Discharge Elimination System (NJPDES) permit for the surface water discharge of the highly treated wastewater from the project. In September 1999, NJDEP also issued a freshwater wetlands and stream encroachment permit for the project. In November 1999, defendants-intervenors Wendy Kelman Neu and John L. Neu, who own property adjacent to the Sidney Brook, appealed this permit, asserting that the planned development posed a risk to bog and wood turtles in the area. Hovnanian, with the support of NJDEP, resisted that appeal and ultimately prevailed. *See In re Stream Encroachment & Freshwater Wetlands Permits*, Nos. A–1440–

99T5, A–3495–99T5 (App.Div. May 30, 2001), *certif. denied,* 170 *N.J.* 88, 784 *A.*2d 720 (2001).

Although they had not initially appealed the March 1999 NJPDES discharge permit, in August 1999, the Neus filed a petition with NJDEP requesting that the March 1999 permit be revoked. They raised a number of grounds as support for the petition, including their concerns about the turtle habitat. In May 2000, NJDEP, while rejecting the contentions raised by the Neus about the turtle habitat, requested that Hovnanian perform an anti-degradation analysis of the Sidney Brook. Hovnanian, asserting that this analysis was both unfair and unprecedented, nevertheless agreed to prepare the anti-degradation analysis. Hovnanian first requested input from NJDEP about the nature and scope of the requested analysis and then submitted its response to the request by September 2000.

According to Hovnanian, its analysis demonstrated that the discharge of highly treated wastewater as allowed in the March 1999 NJPDES permit would result in slight, if any, change in water quality. That is, although for some parameters there would be a slight change in water quality, in all others, there would be no measurable in-stream change as a result of the discharge of the treated wastewater. In addition, according to Hovnanian, water quality would be in compliance with previously set water quality standards. *See N.J.A.C.* 7:9B–1.1.

Hovnanian's analysis concluded that certain parameters could be refined consistent with "best achievable" technology, but it would not be technologically practical or economically feasible to achieve a discharge that would result in no change in water quality of the Sidney Brook. Hovnanian asserted in the report that the benefits to be gained by providing the proposed *Mount Laurel* units and the location of the property in the State Plan's Planning Area 2 justified the relatively minor level of degradation in the water quality of the Sidney Brook. In October 2001, NJDEP requested further information from Hovnanian, which it provided the following month. In September 2002, NJDEP issued a draft

revised NJPDES permit that would further strengthen the previously imposed limitations contained in the March 1999 NJPDES permit.

In November 2002, NJDEP proposed changing the Sidney Brook from a Category 2(C–2) to a Category 1(C–1) stream. *See* 34 *N.J.R.* 3889(a) (Nov. 18, 2002). The effect of that proposed change would be to prohibit any discharge at all into the Sidney Brook if it would measurably affect the water quality. Rather than address the previously proposed draft revised NJPDES permit, on May 19, 2003, NJDEP published a notice of adoption of the change in the classification of the Sidney Brook from C–2 to C–1, effectively nullifying the earlier permit as a means for Hovnanian to develop the property. NJDEP based its reclassification of the Sidney Brook to C–1 status on the recommendation of the NJDEP Commissioner. *See* 35 *N.J.R.* 2264(b) (May 19, 2003).

In July 2003, NJDEP gave Hovnanian notice that it would act to revoke the March 1999 NJPDES permit. In response, Hovnanian filed its complaint in the Law Division [3] seeking relief. The amended complaint, which named only NJDEP as a defendant, includes a *Mount Laurel* and Fair Housing Act, *N.J.S.A.* 52:27D–301 to –329, count, a count denominated "violation of right to housing choice," an estoppel count, a count asserting entitlement to relief pursuant to the time of decision rule, counts based on the federal and state constitutions asserting violations of the takings clause, deprivation of equal protection and due process rights and a count asserting that the New Jersey Water Pollution Control Act, *N.J.S.A.* 58:10A–1 to –60, contravenes the *Mount Laurel* doctrine and is therefore unconstitutional. The Neus, along with Concerned Citizens of Union Township, were granted leave to intervene in November 2003. Thereafter, defendant NJDEP and

---

[3] The record does not include a copy of the complaint filed in July 2003 and referred to by Hovnanian in its brief. Instead, it includes a copy of the amended complaint filed in September 2003, on which we rely for our analysis of the allegations.

the intervenors moved to dismiss the complaint on grounds of ripeness, failure to exhaust administrative remedies and failure to state a claim. Judge Mahon, after considering the parties' briefs and entertaining oral argument, agreed with the moving parties and, for reasons stated on the record on November 17, 2003, he granted the motion and dismissed the complaint.

On appeal, Hovnanian argues that the judge erred in concluding that the doctrine of exhaustion of administrative remedies applies to this dispute, that he erred in concluding that the dispute is not ripe for adjudication and that he erred in failing to recognize that the Law Division is the appropriate forum for resolution of Hovnanian's constitutional and *Mount Laurel* based claims. We have considered each of these arguments in light of the record on appeal and the applicable legal principles and have concluded that they lack merit. We therefore affirm for substantially the reasons expressed by Judge Mahon in his oral opinion of November 17, 2003 and we add only the following observations.

We first note that because the issues raised on appeal relate to matters of law and not of fact, we owe no special deference to the decision reached by the motion judge. *See Manalapan Realty, L.P. v. Tp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

Hovnanian contends that the doctrine of exhaustion of administrative remedies should not apply at all because the complaint asserts that NJDEP has violated the principles established by the Supreme Court in the *Mount Laurel* decisions. It asserts that its complaint, in the nature of a builder's remedy proceeding, would ordinarily be adjudicated in the Law Division and that the motion judge deprived it of the opportunity to create a full factual record in that forum when he dismissed the complaint. Similarly, Hovnanian contends that because the complaint includes constitutional claims that are not appropriately asserted in proceedings before an administrative agency, dismissal of the complaint was improper.

In addressing the arguments concerning the exhaustion doctrine, Judge Mahon noted that the central issue in dispute rests on the claim that the change in the stream classification would prevent the project from being built. He pointed out, however, that the change in classification will only have the effect of preventing the project from being constructed if the March 1999 NJPDES permit is first revoked. Because Hovnanian's claim against NJDEP, therefore, is in reality a challenge to NJDEP's on-going effort to revoke the earlier-granted NJPDES permit for the development based on the reclassification of the Sidney Brook, it remains a matter that must, in the first instance, be addressed in the administrative context.

In particular, at the time when the matter was argued before Judge Mahon, there was a pending proceeding in the Office of Administrative Law in which Hovnanian was attacking the proposed permit revocation. In addition, there was an appeal pending in this court from the NJDEP final agency decision to reclassify the Sidney Brook.[4] In this context, the doctrine of exhaustion plainly applies. As our Supreme Court has held,

> Exhaustion of administrative remedies before resort to the courts is a firmly embedded judicial principle.... This principle requires exhausting available procedures, that is, "pursuing them to their appropriate conclusion and, correlatively * * * awaiting their final outcome before seeking judicial intervention."
>
> [*Garrow v. Elizabeth Gen. Hosp. & Dispensary*, 79 *N.J.* 549, 558–59, 401 *A.2d* 533 (1979) (quoting *Aircraft & Diesel Equip. Corp. v. Hirsch*, 331 *U.S.* 752, 767, 67 *S.Ct.* 1493, 1500, 91 *L.Ed.* 1796, 1806 (1947)).]

In this regard, exhaustion relates to the pending revocation proceedings where the agency record will be created and where Hovnanian will have an opportunity to present its arguments that the permit should not be revoked because of *Mount Laurel* and based on constitutional principles. In the absence of a final decision by NJDEP on the underlying revocation issue, however,

---

[4] At oral argument, we were advised that the appeal from the final NJDEP decision on reclassification had been dismissed for failure to prosecute. Whether or not that appeal is reinstated, however, is not relevant to the issue of ripeness or exhaustion.

there can be no meaningful review. In addition, although we have previously directed that *Mount Laurel* issues be heard by the designated *Mount Laurel* judge, *see Quarry Hills Dev. Corp. v. N.J. Dep't of Transp.*, 267 *N.J.Super.* 1, 8–9, 630 *A.*2d 788 (App.Div.1993), we reject the contention that the administrative remedy may be avoided simply by adding *Mount Laurel* arguments or constitutional contentions to the complaint.

Nor, for that matter, would review of any NJDEP action on the permit revocation be appropriately venued in the Law Division. Rather, a review of the final action of that agency would lie in this court, where the record of the administrative proceedings would be available for our review. *See R.* 2:2–3(a)(2); *Tp. of Montclair v. Hughey*, 222 *N.J.Super.* 441, 448, 537 *A.*2d 692 (App.Div.1987). In that context, we would be empowered to consider the issue of whether the action of the agency violated *Mount Laurel* principles or any other statutory or constitutional mandates. Although in limited situations our Supreme Court has recognized that exhaustion of administrative remedies is not required, *see Brunetti v. Borough of New Milford*, 68 *N.J.* 576, 589, 350 *A.*2d 19 (1975); *Borough of Matawan v. Monmouth County Bd. of Taxation*, 51 *N.J.* 291, 296, 240 *A.*2d 8 (1968), none of the circumstances there cited applies here. We reject the contention, implicit in Hovnanian's argument on exhaustion, that it should be entitled to proceed against NJDEP in parallel proceedings and in an alternate forum of its choosing.

Hovnanian further contends that Judge Mahon erred in concluding that the ripeness doctrine supported his decision to dismiss the complaint. Hovnanian argues that the matter is ripe for adjudication both because there is a well-developed factual record suitable for review and because requiring further resort to administrative processes would be both futile and burdensome.

As Judge Mahon noted, there is a "two-part test to determine ripeness of the controversy: (1) the fitness of issues for judicial review and (2) the hardship to the parties if judicial review is withheld at this time." *966 Video, Inc. v. Mayor & Tp. Comm.*

*of Hazlet Tp.,* 299 *N.J.Super.* 501, 515–16, 691 *A.*2d 435 (Law Div.1995). In determining whether an issue is fit for judicial review, we consider whether review would require additional factual development. *Id.* at 516, 691 *A.*2d 435. In addressing the hardship prong of the test, "where constitutional imperatives are involved, there must be a 'real and immediate' threat of enforcement against the plaintiff." *Id.* at 516–17, 691 *A.*2d 435.

■  Here, as with the exhaustion doctrine, the matter is not yet resolved at the agency level, where ongoing proceedings relating to the proposed March 1999 permit revocation are in progress and where Hovnanian also has the opportunity to request that the property be exempted from the C–1 standards for the portion of the Sidney Brook that will be affected by its planned wastewater discharge. Were NJDEP to grant that application, there would be no need for further proceedings here. In the absence of a decision on these issues by NJDEP, however, our interference would be inappropriate. We agree with Judge Mahon that the controversy does not meet the test for ripeness for judicial review because the factual record on the crucial question of permit revocation or exemption from C–1 status has not yet been fully developed.

In light of the fact that the issues of permit revocation or exemption from C–1 standards are more properly presented to and considered by NJDEP in the first instance and in light of the fact that the record must be developed there, rather than in the Law Division, for our eventual review, we conclude, as did Judge Mahon, that dismissal of the complaint on exhaustion and ripeness grounds was appropriate.

Affirmed.