injuries to customers." *Craggan v. IKEA USA,* 332 *N.J.Super.* 53, 62, 752 *A.*2d 819 (App.Div.2000)(quoting *O'Shea, supra,* 304 *N.J.Super.* at 493, 701 *A.*2d 475).

I conclude the facts before the jury raised legitimate inferences that plaintiff's fall was caused by grease on the floor related to defendants' mode of operation, where workers, exposed to the oil and grease in the kitchen, were not provided with a separate bathroom but were required to use the restrooms provided for patrons. By its verdict, the jury concluded defendants breached its duty to plaintiff to keep the premises reasonably safe.

Because I conclude the record supports the decision of the trial judge to give the mode-of-operation charge, and the jury charge on the whole accurately stated the law applicable to the contested evidence in this case, I would affirm the jury's verdict. *See Mogull v. CB Commercial Real Estate Group,* 162 *N.J.* 449, 464, 744 *A.*2d 1186 (2000).

85 A.3d 1039

STEVEN PLOTNICK, PLAINTIFF, v. REBECCA
DELUCCIA, DEFENDANT.

Superior Court of New Jersey
Chancery Division
Passaic County

Decided November 19, 2013—Approved for Publication March 10, 2014.

"economic considerations, however, cannot supplant the bedrock safety obligations and duties of a retail proprietor to a customer." *O'Shea v. K. Mart Corp.,* 304 *N.J.Super.* 489, 495, 701 *A.*2d 475 (App.Div.1997).

598

600

*Laura Nunnink* for plaintiff (*November & Nunnink, LLC,* attorneys).

*Joanna Brick* for defendant.

MOHAMMED, J.S.C.

### PROCEDURAL HISTORY & FACTUAL FINDINGS

This matter is before the court on plaintiff's application for an order to show cause, which was filed on November 14, 2013. In

the application, plaintiff, a putative father, seeks a temporary mandatory injunction order that: 1) he be notified when the mother, defendant, enters labor; 2) he can be present at the delivery of the child; 3) he be able to sign the birth certificate the day of the child's birth; 4) his surname is included on the birth certificate; and 5) a parenting-time order be issued. Defendant filed a short letter brief on November 15, 2013. Because this action involves a potential challenge to one or more statutes of the State of New Jersey or Agency determination, the Attorney General was notified of this action. Although the Attorney General filed a letter brief, it elected not to appear at the hearing. On November 19, 2013, plaintiff appeared before the court. Defendant appeared telephonically on the same date from the hospital due to health issues related to her pregnancy. Defendant objects to the putative father's presence at the child's birth, citing her own right of privacy.[1] According to the court's research, the issues of whether a putative father has a right to be notified when a woman enters labor, and whether a father has a right to be present at the child's birth over the mother's objection, have never been litigated in New Jersey or the United States.

The central facts of this case are not in dispute. Plaintiff and defendant were never married. The parties entered into a relationship in late 2012 and defendant discovered she was pregnant in February 2013. Shortly after the parties discovered that defendant was pregnant, plaintiff proposed to defendant and she accepted. In early summer 2013, or September 2013, defendant ended the engagement. Plaintiff states that he went with defendant to two doctor appointments.

On or about October 10, 2013, plaintiff's attorney wrote a letter to defendant stating plaintiff's desire to be involved with the pregnancy and the child's life after her birth. On or about

---

[1] Although both parties submitted short letter briefs neither of which cited any statute, case law, or controlling authority in support of their respective positions except *Crowe v. De Gioia*, 90 *N.J.* 126, 139, 447 A.2d 173 (1982).

November 1, 2013, defendant obtained counsel. Through November 8, 2013, both attorneys exchanged a series of letters on the subject of the birth certificate, plaintiff's presence at the hospital, and the use of litigation to resolve the matter if it could not be resolved amicably.

On November 14, 2013, plaintiff filed an order to show cause application and his accompanying certification with the court. The certification states that defendant will not permit him to sign the birth certificate, and will not notify him when she is in labor or allow him to enter the delivery room. On November 15, 2013, defendant filed a brief certification. She disputes that she will forbid plaintiff's name from being included on the birth certificate or that she will not notify plaintiff when she enters labor. However, defendant does state she will request her privacy in the delivery room. Defendant testified that she would include his name on the hospital visitor list.

## DISCUSSION

### I. Ripeness

Defendant argues that the order to show cause should be denied because the issue is not yet ripe, but does not elaborate. As a threshold issue, the court addresses the ripeness of the claim of a putative father before the child is born. A case's ripeness depends on two factors: " '(1) the fitness of issues for judicial review and (2) the hardship to the parties if judicial review is withheld at this time.' " *K. Hovnanian Cos. of N. Cent. Jersey, Inc. v. N.J. Dep't of Envtl. Prot.*, 379 *N.J.Super.* 1, 9–10, 876 *A.*2d 847 (App.Div.2005) (quoting *966 Video, Inc. v. Mayor & Twp. Comm. of Hazlet Twp.*, 299 *N.J.Super.* 501, 515–16, 691 *A.*2d 435 (Law Div.1995)). The court notes that in cases involving a woman's right to choose, federal and state courts allow litigation to commence before the potential birth of a fetus. Similarly, federal courts will not render a woman's choice issue moot if the alleged wrong is capable of repetition but evades review because of its inherently limited time duration. Furthermore, New Jersey

courts have permitted cases concerning parentage rights to commence before the birth of a fetus. *In re T.J.S.*, 212 *N.J.* 334, 54 *A.*3d 263 (2012) (ripeness was not challenged when before the child's birth husband and wife sought a court order declaring their parentage under the New Jersey Parentage Act, and that their names be listed on the birth certificate).

First, this case is ripe for review. The issues in dispute are "purely legal," and thus "appropriate for judicial resolution" without developing additional facts. *Abbott Labs. v. Gardner*, 387 *U.S.* 136, 149, 87 *S.Ct.* 1507, 18 *L.Ed.*2d 681 (1967); *see also Whitman v. Am. Trucking Ass'ns*, 531 *U.S.* 457, 121 *S.Ct.* 903, 149 *L.Ed.*2d 1 (2001). There is no New Jersey statute or case that addresses plaintiff's request to be present at the child's birth over the mother's objection. This application is akin to a facial challenge of a law, which "is generally 'ripe' much earlier than a claim that the [law] is void *as applied*" challenge. *Trombetta v. Mayor & Comm'rs of Atl. City*, 181 *N.J.Super.* 203, 223, 436 *A.*2d 1349 (Law Div.1981), *aff'd o.b.*, 187 *N.J.Super.* 351, 454 *A.*2d 900 (App.Div. 1982).

Second, there is a sufficient showing of potential harm that the parties may suffer if the court were to abstain from resolving some of the issues raised in this case. A delay on resolving the issue of plaintiff's presence during the fetus's birth would cause potential harm if the court were to decide the case in his favor after the birth had already occurred.

█ On the other hand, plaintiff's application for parenting time is not ripe for judicial consideration at this time. Pursuant to *N.J.S.A.* 9:2–4, the court must conduct a best interest analysis. The statute lists several factors the court must consider:

the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the

child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

[*N.J.S.A.* 9:2–4.]

The factors listed, by their plain and ordinary meanings, do not contemplate a best interest evaluation before the fetus is born. First, the statute uses the word "child" and not "fetus." Secondly, the statutory factors cannot be determined at this time as the facts required to make a determination do not exist before a child is born. For instance, factor number three requires the court to consider "the interaction and relationship of the child with its parents and siblings." This is not possible in the pre-birth scenario as the child has had no independent interaction with the parents. Since the vast majority of the factors by their plain meaning cannot be determined pre-birth, the court finds that the claim is not fit for judicial review at this time.

II. The Definitions of "Parent–Child Relationship" and "Father" under the New Jersey Parentage Act, *N.J.S.A.* 9:17–39 to 43.

█ Another threshold issue the court must resolve before addressing plaintiff's current application is whether under the New Jersey Parentage Act plaintiff is deemed a "father."

In New Jersey, at common law, the father of an "illegitimate child [one born out of wedlock]" had no parental rights or responsibility towards the child. *F.W. v. D.S.*, 83 *N.J.Super.* 144, 146–47, 199 *A.*2d 60 (Ch.Div.1964). The child was said to be the child of nobody. WILLIAM BLACKSTONE, 1 *COMMENTARIES* 459; 2 *KENT'S COMMENTARIES,* 214. *See also Wright v. Wright,* 2 *Tyng* 109, 110 (Sup. Jud. Ct. 1806) ("the relative of no one"); *Friesner v. Symonds,* 46 *N.J. Eq.* 521, 527–28, 20 *A.* 257 (Prerog.Ct.1890). Additionally, at common law, New Jersey courts held that with respect to the rights of a putative father to his illegitimate child: "The father has hardly any right at all of custody, if he has any at all which the law recognizes. His position is largely that of a

stranger, an outsider, having no natural relation to the child or children. *Ousset v. Euvrard,* 52 *A.* 1110, 1111 (Ch.1902)."

As the common law afforded no pre-birth or post birth rights and obligations to a putative father, the relief plaintiff seeks must derive from statute. *See generally Splitdorf Electrical Co. v. King,* 90 *N.J.L.* 421, 421–22, 103 *A.* 674 (Sup.Ct.1917), *aff'd,* 92 *N.J.L.* 524, 105 *A.* 894 (E. & A.1918) ("for at common law [the child] was *nullius filius* . . . except as changed by the statute, the common law prevails.")

The New Jersey Parentage Act, which is modeled after the Uniform Parentage Act of 1973, was enacted "to establish the principle that regardless of the marital status of the parents, all children and parents have equal rights with respect to each other and to provide a procedure to establish parentage in disputed cases." *Assembly Judiciary, Law, Public Safety and Defense Committee, Statement to Senate Bill No. 888* (Oct. 7, 1982). The design of the Act is to help families deal with the problems posed by fathers who seek to avoid paying child support. *In Re Estate of Kolacy,* 332 *N.J.Super.* 593, 603, 753 *A.*2d 1257 (Ch.Div.2000). Paternity cannot be simply established by placing a man's name on a birth certificate because a birth certificate does not constitute a legal finding of parentage, nor does it create rights. *In Re Parentage of a Child by T.J.S.,* 419 *N.J.Super.* 46, 53, 16 *A.*3d 386 (App.Div.2011), *aff'd,* 212 *N.J.* 334, 54 *A.*3d 263 (2012).

From the New Jersey Parentage Act the relevant terms key for the instant case are the "parent and child relationship" and "father." The "parent and child relationship" is defined as the "legal relationship existing between a child and the child's natural or adoptive parents, incident to which the law confers or imposes rights, privileges, duties, and obligations." *N.J.S.A.* 9:17–39. The relationship can be established by a certificate of parentage "that is executed by the father . . . *prior to or after the birth* of the child, and filed with the appropriate State agency." *N.J.S.A.* 9:17–41(b) (emphasis added). As to the finding and presumption

that a person is a biological father, the Act provides in relevant part that:

a. man is presumed to be the biological father of a child if

(1) He and the child's biological mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment or divorce;

(2) Before the child's birth, he and the child's biological mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and:

(a) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage, or within 300 days after its termination by death, annulment or divorce; or

(b) If the attempted marriage is invalid without a court order, the child is born within 300 days after the termination of cohabitation;

(3) After the child's birth, he and the child's biological mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and:

(a) He has acknowledged his paternity of the child in writing filed with the local registrar of vital statistics;

(b) He has sought to have his name placed on the child's birth certificate as the child's father, pursuant to R.S. 26:8–40; or

(c) He openly holds out the child as his natural child; or

(d) He is obligated to support the child under a written voluntary agreement or court order;

(4) While the child is under the age of majority, he receives the child into his home and openly holds out the child as his natural child;

(5) While the child is under the age of majority, he provides support for the child and openly holds out the child as his natural child; or

(6) He acknowledges his paternity of the child in a writing filed with the local registrar of vital statistics, which shall promptly inform the mother of the filing of the acknowledgment, and she does not dispute the acknowledgment within a reasonable time after being informed thereof, in a writing filed with the local registrar. If another man is presumed under this section to be the child's father, acknowledgment may be effected only with the written consent of the presumed father. Each attempted acknowledgment, whether or not effective, shall be kept on file by the local registrar of vital statistics and shall entitle the person who filed it to notice of all proceedings concerning parentage and adoption of the child, as provided in section 10 of P.L. 1983, c. 17 (C. 9:17–47) and pursuant to section 9 of P.L. 1977, c. 367 (C. 9:3–45).

[N.J.S.A. 9:17–43.]

Nowhere does the statute expressly define the legal definition of a "presumed father" as existing before the child's birth. Indeed, the plain meaning of N.J.S.A. 9:17–43(a)(1)–(5) can only apply

after the birth of the child. However, sub-part (d) states that absent a presumption "the court shall decide whether the parent and child relationship exists, based upon a preponderance of the evidence." *N.J.S.A.* 9:43(d).

Additionally, the New Jersey Supreme Court did not extend the definition of "mother" under the Act, or through the Equal Protection Clause, when an infertile husband and wife who used a surrogate sought a court order to name the wife as the mother on the child's birth certificate. *In re T.J.S.*, 212 *N.J.* 334, 54 *A.*3d 263 (2012). There, before the child's birth, the husband and wife sought a court order declaring the couple the mother and father on the birth certificate. While the Act provides that an infertile man is the father of a child conceived through artificial insemination, it does not expressly afford the same right to an infertile woman who uses a surrogate. Initially, the trial court made a pre-birth order allowing the wife to be named the mother on the birth certificate. Later, the Department of Health and Senior Services Bureau of Vital Statistics and Registration opposed the wife's name being placed on the certificate. The trial court reversed its decision and the couple appealed. The Appellate Division decision, which was affirmed by the New Jersey Supreme Court, opined that "the plain language of the Act provides for a declaration of maternity only to a biologically—or gestationally—related female and requires adoption to render A.L.S. the mother of T.D.S. No alternative construction is plausible and nowhere in the statutory scheme may it be implied that maternity is established simply by the contractual or shared intent of the parties." *In re T.J.S.*, 419 *N.J.Super.* 46, 56, 16 *A.*3d 386 (App.Div.2011) (citation omitted). Thus, the plain language of the Parentage Act controls the definitions of mother and father.

Justice Albin's dissent in *In re T.J.S.* noted that in surrogate cases pre-birth complaints seeking an order requiring that the married couple's names be printed on the birth certificate as the biological parents are not novel. *In re T.J.S., supra,* 212 *N.J.* 334, 347, 54 *A.*3d 263 (2012) (Albin, J. dissenting). None of the

Justices disputed that if the surrogate did not consent to a pre-birth order would present a different case. *Id.* at 351, 54 *A.*3d 263 (Albin, J. dissenting).

In *A.H.W. v. G.H.B.*, 339 *N.J.Super.* 495, 505–6, 772 *A.*2d 948 (Ch.Div.2000) Bergen County permitted a pre-birth application by two parents to be listed on the birth certificate.[2] The court noted that in the surrogacy context, *N.J.S.A.* 9:3–41(e) invalidates a carrying mother's surrender of her maternal rights until seventy-two hours after the birth.[3] *Id.* at 506, 772 *A.*2d 948. The court denied the requested relief, but issued a conditional order that if the surrogate surrendered her rights after seventy-two hours, but before the five-day window for issuing a birth certificate, the married couple may be listed on the birth certificate as the parents. *Id.* at 505, 772 *A.*2d 948.

In the instant case, the putative father seeks to have a pre-birth order from the court permitting him to sign the birth certificate at the hospital, and that the child bears his surname. Neither party disputes that plaintiff is the putative father, however, there is no evidence that the mother agrees to his naming on the birth certificate in the manner the father seeks.

First, the court finds that legislative intent of the Uniform Parentage Act of 1973, on which the New Jersey Parentage Act is based, is that all children and parents have equal rights and to provide a procedure to establish parentage in disputed cases. Second, this court notes that the *In Re Estate of Kolacy* court

---

[2] The concurrence in *In re T.J.S.* did not comment on the *A.H.W.* opinion. The dissent discussed the *A.H.W.* opinion but did not comment on whether it thought that case was distinguished or overruled by *T.J.S.*, 212 *N.J.* 334, 348 (2012) (Albin J. dissenting).

[3] In New Jersey, as required by *N.J.S.A.* 26:8–28(a), a birth certificate must be issued and filed within five days of birth with the local registrar of the district in which the birth occurred. Pursuant to *N.J.S.A.* 26:8–30, "the attending physician, midwife or person acting as the agent of the physician or midwife, who was in attendance upon the birth shall be responsible for the proper execution and return of a certificate of birth."

opined that the design of the Act is to help families deal with the problems posed by fathers who seek to avoid paying child support. Third, the court observes that *In re T.J.S.* does not permit a court to make a pre-birth order where the plain language of the Parentage Act does not provide for it. The court notes that the *In re T.J.S.* concurrence did not pass judgment on the conditional pre-birth certificate order entered in *A.H.W.* The court further notes that the *In re T.J.S.* concurrence and dissent all the Justices agreed that when a person with parental rights objects a pre-birth order is a different factual scenario then *A.H.W.* The court observes that the appellate decision affirmed in *A.H.W.* opined that placing a father's name on a birth certificate does not constitute a legal finding of parentage. The court notes that *N.J.S.A.* 9:17–41(b) permits a pre-birth finding of a parent relationship when a certificate of parentage is filed and that *N.J.S.A.* 9:17–43(d) permits the court to find by the preponderance of the evidence that a putative father is a father under the Act. Lastly, the court observes that the common law afforded a putative father of an illegitimate child no parental rights or responsibilities.

 From these guideposts the court finds that before a pre-birth certificate could be ordered under the New Jersey Parentage Act there must be a finding, by a preponderance of the evidence, of parentage and the parent-child relationship. In addition, the Act allows for a pre-birth certificate of parentage to be filed with the State. Lastly, the court declines to enter a conditional pre-birth order concerning the birth certificate prior to the delivery of the fetus when a party with parental rights, such as the mother here, objects to a pre-birth order.

The court finds that under the *N.J.S.A.* 9:17–41(b), plaintiff cannot be presumed to be the father pre-birth. However, the court finds by a preponderance of the evidence that under *N.J.S.A.* 9:17–43(d), plaintiff enjoys the statutorily defined parent-child relationship. The court finds that there is no evidence that the mother consents to the father's application to be named on the birth certificate the same day the child is born, or to his request that the child bear his surname. As a result, the court finds that

it would be inappropriate for the court to enter a pre-birth order concerning the birth certificate. Under the Parentage Act the father could file a certificate of parentage pre-birth with the appropriate state agency, but that application is not before this court and does not warrant emergent consideration.

III. Mandatory Injunction

It is well established that the standard governing whether to grant the equitable remedy of a mandatory injunction is the same as a motion for a stay and other equitable remedies. *In re Comm'r of Ins. Deferring Certain Claim Payments by N.J. Auto. Full. Ins. Underwriting Ass'n,* 256 *N.J.Super.* 553, 560, 607 *A.*2d 992 (App.Div.1992). The oft-cited case that delineates that standard is *Crowe v. De Gioia,* 90 *N.J.* 126, 139, 447 *A.*2d 173 (1982). An injunction should only be granted when: "1) such relief is necessary to prevent irreparable harm; 2) the applicant presents a settled underlying claim and makes a showing of reasonable probability of success on the merits; and 3) balancing of the relative hardships of the parties favors granting relief." *Ibid.*

A. Irreparable Harm.

Plaintiff seeks a mandatory injunction to be notified when the mother is in labor, to be present at the child's delivery, an order to sign the birth certificate that exact day, an order to have his name listed on the birth certificate that date, and a parenting-time schedule. Plaintiff states that he will suffer irreparable harm if his application is not granted. Plaintiff asks the court to rely on the proposition that "certainly the plaintiff-father has a right to be alerted and involved at the birth of his child" and that immediate and irreparable harm will follow if the sought relief is denied. However, the letter brief does not cite any statute, case law, or controlling authority stating that such a right or privacy interest exists.

Defendant states that she has no intention to deny plaintiff the ability to sign the birth certificate, nor has she said the child will

not have his surname. In her certification filed with the court, the mother briefly stated her desire for "privacy" during labor. The court infers "privacy" to mean that defendant does not desire plaintiff to be present at the birth.

It is axiomatic that injunctive relief "should not be entered except when necessary to prevent substantial, immediate and irreparable harm." *Subcarrier Commc'ns, Inc. v. Day,* 299 *N.J.Super.* 634, 638, 691 *A.*2d 876 (App.Div.1997).

Plaintiff's request to be present at the birth warrants further inquiry. Plaintiff argues that he possesses a right to be present during the delivery but cites no authority for the proposition. As the court has found no New Jersey legislation or reported or unreported judicial opinions on this asserted right, the court examines the pre-birth rights of parents in other jurisdictions.

The United States Supreme Court first opined in *Roe v. Wade,* 410 *U.S.* 113, 154, 93 *S.Ct.* 705, 727, 35 *L.Ed.*2d 147, 177–78 (1973) that women have a fundamental, but not absolute right of privacy that includes the right to control their bodies during pregnancy founded in the Due Process Clause. The Supreme Court has reaffirmed the essential holding of *Roe* several times:

> It must be stated at the outset and with clarity that *Roe's* essential holding, the holding we reaffirm, has three parts. First is recognition of the right of the woman to choose to have an abortion before viability and to obtain it without undue interference from the State. Before viability, the State's interests are not strong enough to support a prohibition of abortion or the imposition of a substantial obstacle to the woman's effective right to elect the procedure. Second is a confirmation of the State's power to restrict abortions after fetal viability, if the law contains exceptions for pregnancies which endanger the woman's life or health. And third is the principle that the State has legitimate interests from the outset of the pregnancy in protecting the health of the woman and the life of the fetus that may become a child. These principles do not contradict one another; and we adhere to each.
>
> [*Gonzales v. Carhart,* 550 *U.S.* 124, 145, 127 *S.Ct.* 1610, 1626, 167 *L.Ed.*2d 480, 501–02 (2007) (quoting *Planned Parenthood v. Casey,* 505 *U.S.* 833, 846, 112 *S.Ct.* 2791, 120 *L.Ed.*2d 674 (U.S.1992) (opinion of the Court)).]

Thus, the Supreme Court has made it clear that before the birth of her child a mother and the state have legitimate interests in the potential life.

By implication, the Courts' opinions in the women's choice context subordinate the interests of a father to a mother. In *Planned Parenthood v. Casey,* the joint opinion of the Court opined that it was "an undue burden" on the mother to require spousal notification before an abortion. *Planned Parenthood v. Casey, supra,* 505 *U.S.* at 889, 112 *S.Ct.* at 2830, 120 *L.Ed.*2d at 726. There, the Supreme Court struck down a provision of the Pennsylvania Abortion Act that was designed "to protect a spouse's interests in having children within marriage and in protecting the prenatal life of that spouse's child." *Id.* at 908, 112 *S.Ct.* at 2836, 120 *L.Ed.*2d at 735. (appendix to joint opinion) The court recognized that a husband has a "deep and proper concern and interest ... in his wife's pregnancy and in the growth and development of the fetus she is carrying." *Id.* at 895, 112 *S.Ct.* at 2830, 120 *L.Ed.*2d at 727 (opinion of the court) (quoting *Planned Parenthood v. Danforth,* 428 *U.S.* 52, 69, 96 *S.Ct.* 2831, 2841, 49 *L.Ed.*2d 788, 805 (1976)). Nonetheless, the court noted that even between a husband and wife the mother's interests prevail:

> Before birth, however, the issue takes on a very different cast. It is an inescapable biological fact that state regulation with respect to the child a woman is carrying will have a far greater impact on the mother's liberty than on the father's. The effect of state regulation on a woman's protected liberty is doubly deserving of scrutiny in such a case, as the State has touched not only upon the private sphere of the family but upon the very bodily integrity of the pregnant woman. The Court has held that " 'when the wife and the husband disagree on this decision, the view of only one of the two marriage partners can prevail. *Inasmuch as it is the woman who physically bears the child and who is the more directly and immediately affected by the pregnancy, as between the two, the balance weighs in her favor....* If the right of privacy means anything, it is the right of the *individual,* married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.' " The Constitution protects individuals, men and women alike, from unjustified state interference, even when that interference is enacted into law for the benefit of their spouses.

> [*Id.* at 896, 112 *S.Ct.* at 2830, 120 *L.Ed.*2d at 727 (opinion of the court) (internal citations omitted) (emphasis added).] [4]

---

[4] The court rejected the common-law principle that "a woman had no legal existence separate from her husband" as "no longer consistent with our under-

Thus, the Court opined that the husband's interest in the life of his child does "not permit the State to empower him with this troubling degree of authority over his wife" and *"has no enforceable right to require a wife to advise him before she exercises her personal choices." Id.* at 898, 112 *S.Ct.* at 2831, 120 *L.Ed.*2d at 728 (opinion of the court) (emphasis added).

Furthermore, the *Casey* opinion discussed not only women choosing to have an abortion, but also women who carry a child to full term. The Supreme Court took notice that during the pregnancy "the mother who carries a child to full term is subject to anxieties, to physical constraints, to pain that only she must bear." *Casey, supra,* 505 *U.S.* at 852, 112 *S.Ct.* at 2807, 120 *L.Ed.*2d at 699 (opinion of the court). While recognizing the state's interest in child-rearing, the court noted its limits on women who elect to carry a child:

> her suffering is too intimate and personal for the State to insist, without more, upon its own vision of the woman's role, however dominant that vision has been in the course of our history and our culture. The *destiny of the woman must be shaped to a large extent on her own conception of her spiritual imperatives and her place in society.*
>
> [*Id.* at 852, 112 *S.Ct.* at 2807, 120 *L.Ed.*2d at 699 (emphasis added).]

From the opinion of the Court in *Casey* several pre-birth rights of mothers critical to the instant case are brought to light. First, as *Casey* stated, the pain and anxiety a mother endures during the pregnancy have been uniquely borne by her alone. Of paramount importance to the issues before this court, the Court spoke not only of the mother's superior interest in the abortion context, but of her superior interest when she takes the child to term. Secondly, the *Casey* majority opined that before the birth of the child, a husband's deep interest in the pregnancy and his wife's health does not equal the wife's interest in the child. Moreover, the Supreme Court opined that spousal notification was an undue burden on a pregnant woman in the context of abortions. *Casey,*

standing of the family, the individual, or the Constitution." *Casey, supra,* 505 *U.S.* at 897, 112 *S.Ct.* at 2831, 120 *L.Ed.*2d at 727 (opinion of the court).

*supra,* 505 *U.S.* at 894, 112 *S.Ct.* at 2821, 120 *L.Ed.*2d at 725–26 (joint opinion). In essence, while acknowledging the state's and husband's interest, the Supreme Court cautioned against state action in the pre-birth time frame that would interfere with the individual right possessed by the mother.

As to the New Jersey Constitution, nowhere in the Constitution do the words "due process" appear. Nonetheless, Article 1, Paragraph 1, "seeks to protect against injustice and against the unequal treatment of those who should be treated alike. To this extent, Article 1 safeguards values like those encompassed by the principles of due process." *Greenberg v. Kimmelman,* 99 *N.J.* 552, 568, 494 *A.*2d 294 (1985); *N.J. Const.,* Art. I, Para. 1 ("All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty ...."). This provision provides broader protection than the corresponding federal provision. Unlike the multi-tiered, federal constitutional analysis, the New Jersey Constitution weighs the governmental interest in the statutory classification against the interests of the affected class. Using this balancing test, the court considers the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction. *See Planned Parenthood of Cent. N.J. v. Farmer,* 165 *N.J.* 609, 631, 762 *A.*2d 620 (2000) (commonly called the right to choose balancing test).

In addition, the New Jersey Supreme Court opined that the burden placed on minor children to notify their parents when they sought an abortion outweighed any state interest in notification under the New Jersey Constitution. *Id.* at 641, 762 *A.*2d 620. There, the New Jersey Parental Notification for Abortion Act required notice to the parents of unemancipated minors and a forty-eight hour notification in most cases. The Court applied the right to choose balancing test and placed a woman's health and privacy on one side of the scale and weighed those interests against the State's interest in potential life. *Id.* at 631–32, 762

*A.*2d 620. The Court affirmed the importance of a woman's right to reproductive decisions and its interpretation of Article I, Paragraph 1:

[the court is] keenly aware of the principle of individual autonomy that lies at the heart of a woman's right to make reproductive decisions and of the strength of that principle as embodied in our own Constitution. We have not hesitated, in an appropriate case, to read the broad language of Article I, paragraph 1, to provide greater rights than its federal counterpart.

[*Id.* at 632, 762 *A.*2d 620.]

Moreover, the Court found the burden imposed on minor children on a fundamental right weighed heavily in their favor. Moreover, the Court found the states named interests "in protect[ing] children from their own immaturity, foster[ing] and preserv[ing] the family structure and protect[ing] parents' rights to raise their children in a manner they deem appropriate not advanced by the statute." *Id.* at 638, 762 *A.*2d 620. Accordingly, the State's interest "fail[ed] to override" a woman's fundamental right to an abortion under the New Jersey Constitution. *Id.* at 642, 762 *A.*2d 620.

In this case, defendant and plaintiff have never been married. The mother has elected to have the child and carried it well into her third trimester. She has not only gone through extensive training in preparation of the birth, but within the last week she has been hospitalized for the health of the fetus and forced to appear telephonically for this hearing. At the time of the hearing she was being closely monitored by hospital staff. As *Casey* stated, these are burdens that she has faced alone as the carrier of the fetus. This court finds that the mother's burden in carrying the fetus to term warrants particular consideration in its decision. Moreover, from a financial perspective the court has no evidence before it that the father has paid any of the medical expenses or expenses associated with the preparation for the child.

Secondly, the Supreme Court in *Casey* placed particular emphasis on the special interest a married father has in the health of his child and wife. The Court opined that even when the case involves a husband and a wife, the wife's interests prevail. It

follows from this holding that when the man and woman are unmarried, the woman's interest is stronger still. Thus, the court finds that the father's pre-birth interests in the instant case are lower than those of a husband.

Thirdly, the court finds that there can be no question that the interests of both the State and the father are significantly reduced in the context of the father's notification or presence in the delivery room, the signing of a birth certificate, and the child's surname, as compared to their interests in the abortion context. Indeed, a woman's choice whether to carry her fetus or terminate her pregnancy has a far greater impact on the potential child's future than the notification or the physical locus of the father during the delivery or in the child's surname.

Nonetheless, while the unwed fathers' and State's interests in the notification and presence at the birth is less than in the pregnancy termination context, the court finds that monetary damages would not make the father whole if he were to miss the delivery. Thus, the court finds that the father would suffer irreparable harm if the court were to find in his favor at a later time and as such the matter is emergent.

Concerning plaintiff's application regarding an order to sign the birth certificate the day of the birth, and that the child carry his last name from her birth, the court finds that no substantial, immediate, and irreparable harm will result if plaintiff does not sign the birth certificate or if the child did not have his surname the day of the child's birth. Indeed, under *N.J.S.A.* 26:8–28(a), the New Jersey statute governing the issuing of birth certificates, provides five days after the child's birth for the parents and hospital to file the certificate. Thus, the New Jersey Legislature has already decided that the need to sign a birth certificate on the day of birth is not an irreparable harm and as such the matter is not emergent.

Even if plaintiff's application for parenting time were ripe for consideration, the issue would not be emergent at this time. The

fetus is not yet born and entering a parenting time schedule at this time would not be feasible. For instance, if the court were to order parenting time every Tuesday and the child is required due to a physical infirmity to remain quarantined in the hospital for months the order would be unenforceable.[5] In short, this court declines to impose an unenforceable order.

B. Whether Plaintiff's Claim is Settled, and Likelihood of Success on the Merits.

Plaintiff has not shown that the underlying legal right he seeks to establish through his application is "settled." *See Crowe, supra,* 90 *N.J.* at 133, 447 *A.*2d 173 ("[T]emporary relief should be withheld when the legal right underlying [the applicant's] claim is unsettled.") Indeed plaintiff has cited no legislative or judicial authority to support his conclusion that such a right exists. The common law authorities the court has inspected support a finding opposite of plaintiff's position.

The court's research reveals only one case that remotely supports plaintiff's proposition, wherein a California trial court looked "unfavorably" on a mother's decision to keep the father and his wife out of the delivery room. *Lester v. Lennane,* 84 *Cal.App.*4th 536, 553, 101 *Cal.Rptr.*2d 86 (Cal.Ct.App.2000). There, while expecting, a woman initiated an application for custody against the father of the child. The parents were not married to each other, but the father was married to another woman. In a factor for a custody determination after the birth of the child, the trial court found the mother's delay in notifying the father she was in labor "unreasonable." *Id.* at 553, 101 *Cal.Rptr.*2d 86. The trial court awarded custody to the mother, which was affirmed on appeal.[6]

---

[5] The parties entered into a consent agreement on parenting time, which the court approved, on their own after the child was born.

[6] From one sentence in the California appellate court opinion, a pre-birth order on medical records and permission to participate "in the birthing process" was entered, but nowhere did the appellate court that affirmed the trial court discuss any constitutional rights or statutory privacy rights on this issue. Nor

*Id.* at 596, 101 *Cal.Rptr.*2d 86. It appears from one sentence in the appellate court opinion a pre-birth order on medical records and permission to participate in the birthing process was entered, but nowhere did the appellate court that affirmed the trial court discuss any constitutional rights or statutory privacy rights on this issue.

Conversely, the legal privacy rights that defendant asserts are far more established than that right plaintiff alleges. The United State Supreme Court's jurisprudence in the pregnancy termination area has consistently affirmed the mother's constitutionally protected privacy rights during the pregnancy. At the same time the Court has recognized the State's interest in protecting the potentiality of life, yet it has never placed the father's interests above or even equal to the mother post-*Roe.* In fact, in *Casey* the Court clearly stated the father's interests pre-birth are not equal to the mother's interest.

Under the New Jersey Constitution, the father's claim is also likely to fail on the merits. In the context of a woman's fundamental rights in reproductive matters, the New Jersey Supreme Court has consistently affirmed that Article I, Paragraph 1 is broader than the federal Due Process Clause. The balancing test used under the New Jersey Constitution will likely not avail the father the relief he seeks. First, the mother's fundamental right to reproductive activities has been well established under federal and New Jersey jurisprudence. While New Jersey has not addressed the issue of the mother's right pre-birth in notification and presence of the father at the birth, it looked favorably on *Casey* in *Farmer* and has used its language of burdens in its analysis of the New Jersey Constitution. Furthermore, the father's right to the child pre-birth, and the State interest in promoting family structure and life, are likely inapplicable in the context of notification and the father's presence during the birth.

---

does the opinion detail what participation in the birthing process meant. *Lester, supra,* 84 *Cal.App.*4th at 544, 101 *Cal.Rptr.*2d 86.

Putting that to the side, it would be paradoxical if the court were to find that the mother here would have to inform a non-marital partner when she enters labor, when the court has found that minors do not need to notify their parents when seeking an abortion, and federal law has found spousal notification equally burdensome.

Beyond any Due Process Clause interests the mother enjoys, there are also several statutes and common law property relationships that grant medical patients a right of privacy, and, by extension, exclusion. For instance, when the mother voluntarily enters a hospital she not only enjoys doctor-patient privilege, but also enters into a licensor-licensee relationship with the hospital. Through this business relationship the New Jersey Supreme Court has recognized that by:

checking himself [or herself] into a hospital, a patient may well waive his [or her] right of privacy as to hospital personnel, it is obvious that he [or she] has not turned [his or her]room into a public thoroughfare.... The patient knows and expects that nurses, doctors, food handlers, and others enter and leave [his or her] *hospital room in accordance with the medical needs of the patient and the hospital routine.* On the other hand, a hospital room is clearly not a public hall which anyone in the building is free to use as needed. Thus, at least for certain purposes, a hospital room is fully under the control of the medical staff; yet for other purposes it is "the patient's room."

[*State v. Stott,* 171 *N.J.* 343, 794 *A.*2d 120 (2002) (quoting *People v. Brown,* 88 *Cal.App.*3d 283, 291, 151 *Cal.Rptr.* 749 (Cal.Ct.App.1979)).]

Entering into this type of relationship creates the expectation of privacy and the related exclusionary principle of long standing societal norms. *Sayles v. G & G Hotels, Inc.,* 429 *N.J.Super.* 266, 276, 57 *A.*3d 1129 (App.Div.2013) (affirming summary judgment filed by defendant licensor on the licensor's contractual indemnification claim); *E. Jersey Iron Co. v. Wright,* 32 *N.J. Eq.* 248, 253 (Ch.1880) (holding a license is an authority to go upon the land of the licensor and perform a series of acts there.) Thus, even if neither party had a Due Process Clause interest for their respective positions, the father would still have to overcome the mother's right as licensee to exclude the public from her hospital room.

Additionally, a New Jersey appellate court has opined that the New Jersey Hospital Patient Bill of Rights prohibits a hospital's disclosure of the names and addresses of its patients. In *Kinsella v. NYT Television*, 382 *N.J.Super.* 102, 105, 887 *A.*2d 1144 (App. Div.2005), a patient in a trauma center signed a release to appear in a television show. The patient claimed that his injury prevented him from making an intelligent and informed decision about the videotaping. *Id.* at 104, 887 *A.*2d 1144. The appellate court opined that The Hospital Patients Bill of Rights Act "confers various rights upon hospital patients, including privacy to the extent consistent with providing adequate medical care." *Id.* at 107, 887 *A.*2d 1144. The appellate court noted that "even disclosure of a person's admission into a hospital" may reveal information the patient would not want public. *Id.* at 108, 887 *A.*2d 1144. Thus, the court concluded that the Hospital Patients Bill of Rights Act included a prohibition against the hospital's disclosure of names of its patients and the "disclosure of person's admission into a hospital." *Id.* at 109, 887 *A.*2d 1144. Plaintiff's application, seeking an order requiring disclosure of the admission of the mother to the hospital, would require the court to overrule *Kinsella*. Flowing from the *Kinsella* court's conclusions, if disclosure of the patient's admission into a hospital violates a patient's right to privacy, certainly forcing an individual into the room against her wishes would violate her privacy rights.

Federal law also guarantees a patient's right to privacy. The Health Insurance and Portability Act of 1996 (hereinafter "HIPPA"), Pub. L. No. 104–91, 110 *Stat.* 2021, expressly protects: "1) the use and disclosure of [a patient's] information that should be authorized or required." *S.C. Med. Ass'n v. Thompson*, 327 *F.*3d 346, 351 (4th Cir.2003) (quoting HIPPA § 264, 110 *Stat.* 2033). In describing what kind of information is to be protected, Congress expressly defined "health information" to include any information, "whether oral or recorded in any form." 42 *U.S.C.A.* § 1320(d)(4). While HIPPA preempts state laws that do not provide as much privacy protection, it excludes state laws that offer more privacy protection. 45 *C.F.R.* § 160.202. The court has not found publish-

ed or unpublished judicial jurisprudence on whether HIPPA grants patients the same privacy rights to the disclosure of their names as the *Kinsella* court opined the Hospital Patients Bill of Rights Act protects. Thus, the court does not reach a determination on whether HIPPA also protects the same privacy rights the Hospital Patients Bill of Rights Act protects. The court finds that even if HIPPA did not protect such information, the Hospital Patients Bill of Rights Act does protect such information and its protections would satisfy the 42 *U.S.C.A.* § 1320(d)(4) preemption exception.

The totality of the circumstances lay bare that plaintiff has not demonstrated to the court the likelihood of success on the merits. For the reasons stated, modern constitutional jurisprudence has clearly confirmed that any interest a father has before the child's birth is subordinate to the mother's interests. There is no legislative or judicial authority to support the right plaintiff asserts. Conversely, the modern authority and jurisprudence has recognized that a mother has a greater pre-birth interest than a father. Even if there were no Due Process Clause interests, as a licensee in a hospital the mother would have a recognized legal and practical right to exclude the father from the room, which he would have to overcome.

A finding in favor of plaintiff for both notification and forced entry into the delivery room would in fact be inconsistent with existing jurisprudence on the interests of women in the children they carry pre-birth. It would create practical concerns where the father's unwelcomed presence could cause additional stress on the mother and child. Moreover, such a finding would also lead to a slippery slope where the mother's interest could be subjugated to that of the father's as the *Casey* court warned. Under the totality of the circumstances, the court finds that the father is not likely to succeed on the merits on the issue of notification and presence in the room.

As to plaintiff's application to sign the birth certificate, for the child to have his surname, and establish parenting time, he is

likely to succeed on the merits. Plaintiff's application for parenting time is likely to succeed on the merits but irreparable harm would not occur if the beginning of his parenting time is delay until after the birth. Plaintiff also will not suffer immediate irreparable harm if his signing of the birth certificate or adding his surname to the child occurs at a later date.

### C. Balancing the Relative Hardships.

The final factor under *Crowe* is "the relative hardship to the parties in granting or denying relief." *Crowe, supra,* 90 *N.J.* at 134, 447 *A.*2d 173. If an injunction were to be issued in this application, the mother would suffer the discomfort of having an unwanted person present during a medical procedure. Her special relationship to the child to be born, which has been recognized by the Supreme Court in *Casey* would be infringed. Further, the additional stress that the father's presence may add to an already stressful situation could endanger both the mother and the fetus. As the Supreme Court has noted since *Row,* the state has a legitimate interest in protecting both the mother's health and the potentiality of life. The court pays special attention to the holding in *Casey* that spousal notification in the abortion context was found to be an undue burden and rendered the provision at issue there infirm. The court finds that this special relationship between the mother and fetus in the pre-birth time heavily weighs in her favor and that her privacy interests during the birth are protected under the Due Process Clause of the Fourteenth Amendment.

Conversely, if an injunction were to be denied and the father were not notified or present during the birth, the father would suffer a hardship. The court notes that neither legislative nor judicial authority exists that specifically delineate what recognized privacy interests or rights a father has before the fetus is born. It further notes that the common law provided no rights or responsibilities to the father of a child born out of wedlock. Nevertheless, the court finds that the father has an interest in the child's well-being and birth. The court notes the historical

changes in society where even forty years ago fathers often would not be present at their child's birth. Today many hospitals provide waiting rooms for expectant fathers and make provisions for the expectant father's presence in delivery room to videotape the delivery, and cut the umbilical cord. The court also notes the importance of a child's birth both to the father and child later in its life. In a time where there is an increasing amount of children raised by single mothers and fathers major life events take on new and significant meaning. Even when there is no doubt that a father has shown deep and proper concern and interest in the growth and development of the fetus, the mother is the one who must carry it to term. While the request to be present at birth may appear not to be unreasonable, in the absence of any statutory support, the court lacks authority to grant the father the right he is seeking.

This expectant father's desire to be involved in the child's life from inception is laudable and is consistent with New Jersey's long standing general public policy to provide access to both parents. *See Daly v. Daly*, 39 *N.J.Super.* 117, 123, 120 *A.2d* 510 (Cty.Ct.1956) (discussing the child's privilege to know love and respect both parents). Indeed, U.S. census data released in 2012 shows that nearly three million children under eighteen now live with their fathers only. U.S. Census Bureau, America's Families and Living Arrangements: 2012, Table C2, Household Relationship and Living Arrangements of Child Under 18 Years, by Age and Sex: 2012—available at *http://www.census.gov/hhes/families/data/cps2012.html.* However, as laudable as the expectant father's desires are, the court cannot discount the privacy interests of an excepted mother.

Flowing from all these findings, the court further finds that requiring the mother to notify the father that she has gone into labor and or require his physical presence would be an undue burden on her. There can be no question that any mother is under immense physical and psychological pain during labor, and for the State to interfere with her interest in privacy during this

critical time would contradict the State's own interest in protecting the potentiality of human life. The order the father seeks would invade her sphere of privacy and force the mother to provide details of her medical condition to a person she does not desire to share that information with. Thus the court finds that the mother's constitutionally protected interests before the child is born far outweigh the State's and father's interests during the delivery period.

The father's application for a temporary mandatory injunction to be notified when the mother enters labor and to be present during the birth is hereby denied. The father's application for a temporary mandatory injunction to be present to sign the birth certificate and have his surname added to the certificate on the exact date of birth is denied as it is not an irreparable injury. In addition, the mother's protected constitutional interests further require the court to deny adding the father's surname and signing the birth certificate on the day of the child's birth.

The father's application for a temporary parenting time schedule is denied because it is non-emergent. Moreover, the application is not ripe for judicial consideration because further factual information including the child's health is required before the court could begin a best interest evaluation.

IV. Counsel Fees

*Rule* 5:3–5 permits the court, within its discretion, to make an allowance for counsel fees, subject to the provisions of *Rule* 4:42–9(b), (c), and (d), both pendente lite and on final determination. *Rule* 5:3–5 indicates where award of attorneys' fees in family actions is appropriate. When exercising its discretion, the court considers the following factors: (1) the financial ability of the party seeking the award to pay the counsel fees; (2) the financial ability of the party against whom the fees are sought to pay said fees; (3) the good or bad faith of either party in pursuing or defending the action; (4) the nature and extent of the services rendered; (5) the reasonableness of the fees; and (6) any other

factor bearing on the fairness of an award. *Rule* 5:3–5(c); *Mani v. Mani,* 183 *N.J.* 70, 95, 869 *A.*2d 904 (2005) (citing *Williams v. Williams,* 59 *N.J.* 229, 233, 281 *A.*2d 273 (1971)); *Mayer v. Mayer,* 180 *N.J.Super.* 164, 169–70, 434 *A.*2d 614 (App.Div.1981) (counsel fees involves complexity and difficulty of issues determined).

Defendant seeks an award of counsel fees. The positions advanced by both parties have not been unreasonable. The court further finds that neither party has acted in bad faith. As such, the court denies counsel fees to defendant.

## CONCLUSION

As a threshold issue, the court finds that the application except for the parenting time component is ripe and fit for judicial review, and the hardship to the parties if judicial review is withheld favors adjudication. The court further finds by a preponderance of the evidence that as the parties do not dispute plaintiff's paternity, he is a father under the New Jersey Parentage Act. The court finds a pre-birth order concerning the birth certificate is inappropriate when a party with parental rights objects.

The court finds that under the Due Process Clause contained in the Fourteenth Amendment the mother has a special protected interest in the child pre-birth. There is no specific existing rule of law, legislatively or judicially founded, that would permit this court to grant the father the pre-birth rights that he is seeking. The father has established that he would suffer irreparable harm if his application to be notified about the time of the child's birth and to be present at the birth were not heard on an emergent basis. However, the court finds that the right that the father seeks to enforce is not settled and that he will likely not succeed on the merits. The court finds that flowing from the language and reasoning in *Casey's* opinion of the court, the father's interest is the child pre-birth is not equal to the mother's interest. The court further finds that it would be an undue burden on the mother to require her to notify the father when she is in labor or require his

presence during labor. It would invade her sphere of privacy and provide unwarranted strain on the mother. Furthermore, the court finds that the State's interest in protecting the potentiality of life requires it not to issue a mandatory injunction for notice or the father's appearance at the fetus's birth. Balancing the relevant factors, the court finds that they overwhelmingly favor the mother's interests over the father's application for his notice and appearance at the child's birth.

Under Article 1 Paragraph 1 of the New Jersey Constitution the court finds that mother enjoys a fundamental right to privacy until her child's birth. The father also enjoys a pre-birth interest in the child. However, that interest is not equal to the mother's constitutionally recognized right or privilege. Applying the right to choose balancing test, the court finds that ordering the mother to notify the father is an undue burden on the mother. Consequently, the court also finds that requiring the father to be present in the delivery room against the mother's desire would be an undue burden on her fundamental rights under the New Jersey Constitution.

Even if the mother does not object to the father's application to write his name on the birth certificate and have his surname attached to the child from its birth, the court finds that the father will not suffer irreparable harm if it is not done on the exact date of the child's birth to warrant an emergent order. The court finds that the statute governing birth certificates affords parents five days to sign the birth certificate. Because the Legislature has spoken that a birth certificate does not have to be signed immediately the court finds there is no harm to the father if he does not sign the certificate on the date of the child's birth. Similarly, the court finds that ordering the father's name be entered onto the birth certificate on the day that the child is born does not rise to the level of an immediate irreparable harm. The court finds that neither party acted in bad faith and defendant's application for counsel fees is denied.